NESBITT, Judge.
Plaintiff-appellant Simkins Industries, Inc. (“Simkins”) appeals an order entering final summary judgment in favor of defendant-appellee Lexington Insurance Company (“Lexington”). At issue is Simkins’ entitlement to certain insurance proceeds.
Underlying this action are a series of loans from Simkins’ predecessor to WAK Limited, Inc. in a total amount of about $5.5 million. WAK executed a promissory note, mortgage, and security agreement in Simkins’ favor. The mortgage and security agreement granted Simkins a security interest in the Monte Carlo Hotel and the land underneath it, located on Miami Beach. Additionally, the agreements gave Simkins a security interest in the personal property WAK used in connection with the hotel and the proceeds of all insurance policies that covered the hotel. Simkins properly recorded all of its interests.
As part of the loan transaction, WAK also agreed to keep the secured property insured, assign all of the policies to Simkins as additional security, and direct all insurers to make payments to Simkins in the event of a loss. WAK duly procured a $2 million “all-risk” policy with Lexington, which included coverage for fire damage. The policy covered loss or damage to the building, business personal property, and business income loss, Simkins was named as the first mortgagee in the policy’s loss payable clause.
In October of 1993, while the policy was in effect, the hotel was damaged by fire. Simians filed the instant action for proceeds due under the policy. Soon thereafter Lexington paid an agreed amount into the court registry which represented proceeds for building and structural damage.[1] Lexington later filed the motion for summary judgment that gave rise to the order being appealed. The effect of the order is to hold that Simkins may not recover under the policy for any loss of business income or damage to business personalty.
Simkins advances several grounds on which it claims it is entitled to recover for lost personalty and business interruption proceeds. First, Simkins argues that it is entitled to recover all proceeds payable under the policy in its status as WAK’s assign-ee.[2] Lexington counters that any assignment was in violation of the policy provisions that prohibit assignment without the consent of the insurer.[3]
Preliminarily, we note that this is not a case coming under the well-settled principle that a policy provision prohibiting assignment does not apply to an insured’s assignment of an after-loss claim. See, e.g., Better Constr., Inc., v. National Union Fire Ins. Co., 651 So.2d 141 (Fla. 3d DCA 1995). WAK’s assignment to Simkins clearly occurred before the loss. Nonetheless, we conclude that the assignment here involved does not come under the policy provisions prohibiting assignment without Lexington’s consent.
The plain language of the assignment, not to mention the surrounding circumstances, clearly indicate that WAK assigned *350 the poliey as collateral security for the payment of its debt to Simkins. Such “assignments” (also referred to as “transfers” or “pledges”) are regarded, correctly in our view, as being outside the scope and purpose of general policy provisions against assignment without the insurer’s consent. See 3 Couch on Insurance 3d § 37:43 (1995); 5A Appleman, Insurance Law and Practice, § 3452 (1970); Annotation, Transfer or Pledge of Fire Insurance Policy as Collateral Security for Debt as Within Policy Provisions Prohibiting or Restricting Assignment of Policy, 31 A.L.R.2d 1199, 1200 (1953), and cases cited therein.
“The reason generally given for this rule is that the assignee in such a case acquires a mere equity under the poliey and the insured is not divested of his or her legal interest in the policy.” Couch on Insurance, supra, § 37:43. “Such a transfer does not affect legal title to or possession of the property involved.” Hartford Fire Ins. Co. v. Mutual Sav. & Loan, 193 Va. 269, 68 S.E.2d 541, 544 (1952). Moreover, the purpose of such nonassignability clauses is “to prevent an increase of risk and hazard of loss by a change of ownership without the knowledge of the insurer.” Couch on Insurance, supra, § 35:3. Clearly, that purpose is not implicated by the assignment in this case. Thus, the trial court incorrectly concluded that Simkins was not entitled to recover for the loss of business income and the loss and/or damage to personalty.
In light of our holding on this issue, we need only address one other point. Lexington’s policy contained “Asbestos Exclusions,” detailing circumstances under which the policy would not cover any damages, losses, etc., arising out of the existence of asbestos. In its complaint, Simkins alleged that “certain contents of the Monte Carlo Hotel were discarded on the basis that the same had been contaminated by asbestos relating to the fire.” The trial court, assuming arguendo Simkins could recover for loss of personalty, concluded that the foregoing allegation fell within the policy’s exclusion and precluded Simkins from recovering for such personalty. The court cited Inman v. Club on Sailboat Key, Inc., 342 So.2d 1069 (Fla. 3d DCA 1977), for the proposition that Simkins could not deviate from the position taken in its complaint in order to defeat summary judgment. We agree in part.
Simkins is bound by its pleading. Moreover, the record does not reflect it ever filed a motion to amend its complaint. However, while Simkins alleged that “certain contents” were discarded because they were asbestos contaminated, it did not allege that all of the contents were discarded for that reason. Thus, to the extent Simkins can demonstrate that some personalty was lost or damaged for reasons unrelated to asbestos, it may recover for it under the poliey. We affirm the trial court insofar as it concluded that Simkins may not recover for the loss of those items that were discarded on the basis that they were asbestos contaminated.
We affirm in part and reverse in part the order entering summary judgment in Lexington’s favor and remand for further proceedings consistent with this opinion.

. Those funds are the subject of a related action below between Simkins and a second mortgagee of the Monte Carlo Hotel.

. Simkins' agreement with WAK provides in pertinent part: "Such policies of insurance and all renewals thereof are hereby assigned to Mortgagee as additional security for payment of the indebtedness hereby secured....”

.There are two such provisions in the policy at issue: (1) “Assignment of this policy shall not be valid except with the written consent of this Company.”; and (2) "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.”