704 So.2d 1384 (1998)
LEXINGTON INSURANCE COMPANY, Petitioner,
v.
SIMKINS INDUSTRIES, INC., etc., Respondent.
No. 90323.
Supreme Court of Florida.
January 22, 1998.
*1385 Hinda Klein and Sharon Shade of Conroy, Simberg & Ganon, P.A., Hollywood, and Daniel S. Pearson of Holland & Knight, Miami, for Petitioner.
Alan T. Dimond and Elliot H. Scherker of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Patricia M. Silver of Silver & Waldman, P.A., Miami, for Respondent.
SHAW, Justice.
We have for review Simkins Industries, Inc. v. Lexington Insurance Co., 688 So.2d 348 (Fla. 3d DCA 1997), based on conflict with Classic Concepts, Inc. v. Poland, 570 So.2d 311 (Fla. 4th DCA 1990). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Simkins.
Simkins Industries, Inc. (Simkins) loaned WAK Limited, Inc. (WAK) approximately $5.5 million to finance WAK's ownership of the Monte Carlo Hotel on Miami Beach. In exchange for the funds, WAK executed various notes and mortgage and security agreements granting Simkins a security interest in the hotel, the land underneath it, and the personal property WAK used in connection with the hotel. WAK agreed to keep the hotel insured, assign all of the policies to Simkins, and direct all insurers to make payments to Simkins in the event of a loss. WAK procured a $2 million insurance policy with Lexington Insurance Company (Lexington) which covered loss or damage to the building, business personal property, and business income.[1] Simkins was named as the first mortgagee in the policy's standard loss payable clause.[2]
The hotel was damaged by fire in October 1993, and Simkins brought this action because Lexington agreed to cover only the building and structural damage pursuant to the mortgage clause. Simkins argues that it is entitled to recover for lost business income and business personal property pursuant to two theories: (1) under the plain language of the Declarations page, and (2) under WAK's agreement to assign the policy to Simkins. The trial court did not address the second theory, but found that as mortgagee Simkins was entitled to recover only for property damage. The district court reversed under the second theory, concluding that Simkins was entitled to recover for loss of business income and damage to business personalty pursuant to its status as assignee:
The plain language of the assignment, not to mention the surrounding circumstances, clearly indicate that WAK assigned the policy as collateral security for the payment of its debt to Simkins. Such "assignments" (also referred to as "transfers" or "pledges") are regarded, correctly in our view, as being outside the scope and purpose of general policy provisions against assignment without the insurer's consent....
... Moreover, the purpose of such nonassignability clauses is "to prevent an increase of risk and hazard of loss by a change of ownership without the knowledge of the insurer." Clearly, that purpose is not implicated by the assignment in this case. Thus, the trial court incorrectly concluded that Simkins was not entitled to recover for the loss of business income and the loss and/or damage to personalty.
Simkins, 688 So.2d at 350 (citations omitted). Lexington claims that the district court ruled *1386 incorrectly and that the policy's "no assignment" clauses rendered it nonassignable. We agree.
Section 627.422, Florida Statutes (1995), expressly states that the terms of an insurance policy determine its assignability:
Assignment of policies.A policy may be assignable, or not assignable, as provided by its terms. Subject to its terms relating to assignability, any life or health insurance policy under the terms of which the beneficiary may be changed upon the sole request of the policy owner may be assigned either by pledge or transfer of title, by an assignment executed by the policy owner alone and delivered to the insurer, whether or not the pledgee or assignee is the insurer. Any such assignment shall entitle the insurer to deal with the assignee as the owner or pledgee of the policy in accordance with the terms of the assignment, until the insurer has received at its home office written notice of termination of the assignment or pledge or written notice by or on behalf of some other person claiming some interest in the policy in conflict with the assignment.
§ 627.422, Fla. Stat. (1995) (emphasis added).[3] The policy in the present case contains two express nonassignment clauses:
Assignment of this policy shall not be valid except with the written consent of this Company.
Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
The purpose of a provision prohibiting assignment is simpleto protect an insurer against unbargained-for risks.[4] In the present case, if Simkins is permitted to recover pursuant to the assignment theory as the district court suggests, the above purpose would be frustrated in light of Lexington's arson defense against WAK.[5] Accordingly, based on the unambiguous language of the statute and the policy, we hold that the policy's nonassignment clauses are dispositive and WAK's purported assignment of the policy was ineffective. See Classic Concepts, 570 So.2d at 313 (holding that section 627.422 prohibits assignment of an insurance policy without the insurer's consent where the policy includes an unambiguous "no assignment" clause). Accordingly, we quash Simkins, approve Classic Concepts, and remand this case for proceedings consistent with this opinion. On remand, any issues previously raised but left unresolved can be addressed.
It is so ordered.
KOGAN, C.J., OVERTON, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The policy's Declarations page states in pertinent part:
 COMMERCIAL PROPERTY POLICY
 DECLARATIONS
 ....
 ITEM 5. Description of Property Covered:
 BUILDING
 CONTENTS
 BUSINESS INCOME

[2] The standard mortgage clause states in pertinent part:

2. Mortgage Holders
....
b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.
(Emphasis added.)
[3] Lexington concedes that an insured may assign insurance proceeds to a third party after a loss, even without the consent of the insurer. See Better Constr., Inc. v. National Union Fire Ins. Co., 651 So.2d 141, 142 (Fla.3d DCA 1995).
[4] See, e.g., 3 Lee R. Russ, Couch on Insurance 3d § 35:3 (1997)("[A]s a general rule, [fire insurance] policies contain a clause forbidding an assignment of the policy without the consent of the insurer, and imposing a forfeiture for a violation of this restriction, the object being to prevent an increase of risk and hazard of loss by a change of ownership without the knowledge of the insurer.").
[5] Lexington contends that WAK has no claim against Lexington because the hotel was destroyed by WAK's arson: "The named insured [WAK] had no claim in light of its arson."