BGORBATY, Judge.
Defendant Jeffery Davis appeals his conviction for theft over five hundred dollars, and his sentence of five years at hard labor, with credit for time served, as a second offender. For the following reasons, we affirm the conviction, and remand the case to the trial court for a ruling on Mr. Davis’s motion for reconsideration of sentence.
STATEMENT OF THE CASE:
Jeffery Davis was charged with the theft of currency valued at five hundred dollars or more. A twelve-member jury found him guilty as charged, and the trial court sentenced him to five years at hard labor. The State filed a multiple bill charging Mr. Davis as a second offender. At the multiple bill hearing, Mr. Davis admitted his identity as to the prior conviction, and the trial court found him to be a second offender. The original sentence was vacated, and Mr. Davis was resentenced to five years at hard labor. A motion for reconsideration of sentence was filed, however, the court deferred a ruling on the motion.
STATEMENT OF THE FACTS:
Brenda Mansion testified that between February and August of 1998, she worked as a cashier at LSU Medical Center. She stated that Mr. Davis was the | ¡¡supervisor of bank transactions, and also her supervisor. She further testified that her duties at the time required her to collect cash, check and credit card payments from patients. At the end of the day, she prepared a daily closeout sheet and gave it to Mr. Davis. Each payment was also logged into the computer under that patient’s account as she received it. Ms. Mansion stated that at the beginning of every day, she would receive $125 in cash from Mr. Davis, and would note that amount on the daily closeout sheet. She identified a copy of the closeout sheet that she kept for her own records from July 14 which listed $1,697.00 in cash, $1,724.00 in checks, and $10.00 on credit cards for a total of $8,431.00. She also identified her signature on the form. Ms. Mansion was shown a second closeout sheet for the same date that reflected no cash payments from patients that day, but had the same amount for checks and credit cards. She denied filling out that form. She identified a closeout sheet signed by her dated May 21 that indicated a total of $315.00 in cash; and she was shown a second sheet for the same date that indicated no cash had been received. She identified yet another of the *636 sheets she had prepared showing that $282.83 in cash had been received, and another one she had not prepared with the same date showing no cash. Ms. Mansion explained that any payments by traveler’s check were to be treated as a cash payment, but that payment by traveler’s check was rare. She stated that if she did not have time at the end of the day to post the payments, all of the cash, check, and credit card payments received that day would be put in a bank bag and given to Mr. Davis to be placed in his desk safe overnight.
Jeanine West testified that she was the sixth floor cashier at the LSU Medical Center, and that her immediate supervisor was Wanda Shear. She testified that she sometimes gave her closeout sheets to Ms. Shear, and sometimes [ ^directly to Mr. Davis. She said that her copies of the closeout sheets could not be located. Ms. West explained what the group number meant on the forms, and that there was a Group 13, indicating charges incurred from 1997 to present, and a Group 3, indicating charges incurred prior to 1997. She stated that when a patient wanted to make a payment, she would pull up the account statement on the computer. The account number would either have a 13 or a 3 behind the account number, indicating to which group the payment should be credited. She said that payments could be divided between Group 13 and Group 3 if that was what the patient wanted, and the payment would be put in different batches.
Shannon Derbigny, a cashier at LSU Medical Center, testified that Mr. Davis was her supervisor during the period of February to August of 1998. She testified that she gave all of the cash she received to him at the end of the day. She would count the money first, and then he would count it in front of her to verify the amount. She explained that she did not have a cash drawer and would put cash received into a manila envelope. She also had a receipt book for the cash, and testified that she could not get a new receipt book from the accounting department until she turned in the old one. The book contained quadruple copies: a white copy for the patient, blue and pink copies that were turned in with the receipts to Mr. Davis, and a yellow copy that remained in the book.
Celeste Thomas testified that she was the cash management supervisor at LSU Medical Center. She stated that in the period between February and August of 1998, Mr. Davis would turn over to her whatever cash, checks and credit card receipts had been given to him by the cashiers. Ms. Thomas admitted that occasionally Wanda Shear would turn in the daily receipts for a cashier. She identified Mr. Davis’s handwriting on the forms that were given to her along with |4the payments; and, she noted the discrepancy regarding cash received between those forms and the ones signed by Brenda Mansion. She testified that Mr. Davis used to give her the forms filled out by the cashiers, but at some point told her that he was making things simpler by combining them. Therefore, she was not seeing the forms actually signed by the individual cashier, but, rather, a form filled out by Mr. Davis. She further testified that the pink cash receipt would later be matched up with the yellow receipt in the receipt book and that the blue receipt would be kept with the cash. She stated that some but not all of the pink and yellow receipts matched up, and that Mr. Davis had failed to submit copies of the cash receipts. She also stated that unlike Mr. Davis, she did not have access to the computer system where payment records could be changed.
Lee Ambeau testified that she was the supervisor of healthcare services at LSU Medical Center and that she was Mr. *637 Davis’s direct supervisor from February to August of 1998. She stated that he was to turn in what he received from the cashiers to Celeste Thomas, and that after she counted the money, both Mr. Davis and Ms. Thomas would sign off. She testified that she found out about the theft of cash by accident when Mr. Davis failed to enter blocks on students who had not paid their bills to LSU prior to graduation. She explained that she had instructed Mr. Davis to contact the students about paying their outstanding debts prior to graduation, and to inform the Registrar’s Office once the debt was paid. When she discovered that Mr. Davis had falsely reported to the Registrar’s Office that no one was blocked, she informed her supervisor, Kathy Edwards. Ms. Edwards thereafter informed Mr. Davis that he would be suspended for three days for insubordination. Ms. Ambeau stated that Mr. Davis’s suspension was effective on a Wednesday at 5 p.m., and that night she handled his duties. The next morning, RWanda Shear, who was defendant’s backup, told her that she had opened the safe and found that a manila envelope that contained $300 and was always left in the safe was missing. Ms. Shear also told Ms. Ambeau that she had given Mr. Davis two deposits the day before that he locked in the “pedestal” by his desk. Ms. Ambeau said that she unlocked the pedestal and it was empty. She stated that George Bucher, Ms. Ambeau’s supervisor, called Mr. Davis at home and asked his roommate to tell Mr. Davis to return the money by 5 p.m. Ms. Ambeau testified that checks and other papers were returned, but no cash. She testified that Mr. Davis was to return from his suspension on Tuesday, but did not. He was fired on Friday.
John Caire testified that he was the director of finance for the LSU Healthcare Network. He reported to the police that over $10,000 was missing, an amount determined by his staff who had gone over past records. He described the billing process used by the LSU Healthcare Network, a private corporation that took over LSU Medical Center in the fall of 1997. He explained that payments had to be posted to different groups, depending on when the debt was incurred. Mr. Caire stated that if a patient did not direct the payment, the cashier would apply it to the oldest debt. He also testified that Mr. Davis was the only person who had access to the computers, receipt books, payment batches, charge batches, cash, and daily closeout sheets.
Mr. Davis testified that he worked for the LSU Medical Center from December 1997 until he quit on July 29, 1998. He was employed as a team leader over patient relations. His duties included the posting of cash and other payments. He stated that after LSU Healthcare Network took over from the state, there was a great deal of confusion as far as the acceptance of payments was concerned. He |fisaid that there were two groups, one for the corporation (LSU Healthcare System), and one for the charity hospitals, and that each group had its own receipts and credit card machines. Mr. Davis said that it was possible for patients to receive multiple statements from LSU, depending on the date of the visit. Many times patients did not know what to pay, how to pay, or when to pay. He stated that he would have to change reports when the cashiers posted payments to the wrong group. He denied taking any money that belonged to LSU. On cross-examination, Mr. Davis admitted that he had a theft conviction, which he characterized as a “hot check” conviction, from Texas. He denied being fired from his job at LSU, claiming that he quit because he was disgusted.
DISCUSSION:
ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, Mr. Davis complains that he received ineffec *638 tive assistance of trial counsel. He asserts that counsel failed to object to hearsay testimony and to expert opinion testimony by a lay witness.
Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Kelly, 92-2446 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, writ denied 94-2087 (La.1/6/95), 648 So.2d 921. The present record is sufficient to evaluate the merits of Mr. Davis’s claim.
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel’s performance was deficient and that the deficient performance prejudiced him. With regard to counsel’s performance, the defendant must show that counsel made errors so serious that counsel was not functioning as “counsel” guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel’s errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Id. 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant’s conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland criterion has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989), writ denied, 559 So.2d 1374 (La.1990). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5 Cir.1984).
If an error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, hindsight is not the proper perspective for judging the competence of counsel’s decisions because opinions may differ as to the advisability of a tactic; and, an attorney’s level of representation may not be determined by whether a particular strategy is successful. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The hearsay testimony to which Mr. Davis argues his trial counsel should have objected was that given by Lee Am-beau concerning what she had been told by the Registrar’s Office, as well as what she had been told by Wanda Shear, |sKathy Edwards, and George Bucher. Although this testimony was hearsay, trial counsel’s failure to object does not amount to ineffective assistance of counsel under Strickland. Ms. Ambeau’s testimony described the circumstances surrounding the discovery of the missing money, and was incidental to the issue of whether Mr. Davis was the one responsible for the missing money.
Mr. Davis’s other complaint of ineffective assistance focuses on his counsel’s failure to object to Celeste Thomas testifying that she recognized Mr. Davis’s handwriting on the closeout sheets he turned over to her. He complains that she should not have been allowed to give opinion testimony because she was not qualified as an expert in handwriting analysis. La.Code Evid. art. 701 provides that if a witness is not testifying as an expert, his testimony in the form of inferences or opinions is limited to those opinions or inferences rationally based upon the perception of the *639 witness and are helpful to a clear understanding of his testimony or the determination of a fact in issue. In the present case, Ms. Thomas’s testimony identifying the handwriting on the form as that of Mr. Davis was rationally based upon her personal observations of his handwriting. Moreover, Mr. Davis admitted that the signature on the form was his. Trial counsel had no basis for objecting. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, Mr. Davis complains that the State failed to present sufficient evidence to prove his guilt beyond a reasonable doubt. He argues that the State failed to show that he was the one who took the missing money from LSU because no one actually saw him stealing any money, and that the missing money could have been due to accounting errors caused by posting the money to the wrong group.
¡¡¡The standard for reviewing a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473. The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, Davis v. Louisiana, 513 U.S. 1066, 115 S.Ct. 687, 130 L.Ed.2d 617 (1994). This is not a separate test from Jackson v. Virginia, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the ^Jjjdefendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224.
Mr. Davis was convicted of theft of currency valued at over five hundred dollars. La.Rev.Stat. 14:67(A) defines theft as the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations; and an intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
The circumstantial evidence presented by the State excluded every reasonable hypothesis of innocence. The most damn *640 ing evidence was that of the closeout sheets of Brenda Mansion. The ones she kept for her own records reflected that she received cash from patients, and then turned the cash over to Mr. Davis. The closeout sheets that Mr. Davis admitted he signed and handed over to Celeste Thomas showed that no cash was received by him from Ms. Mansion. This evidence establishes that Mr. Davis took the cash given to him by Ms. Mansion, and then falsified the form he signed and gave to Ms. Thomas in order to cover up his crime. The evidence was sufficient to convict.
ASSIGNMENT OF ERROR NO. 3:
In his third assignment of error, Mr. Davis complains that he received an excessive sentence. He argues that his sentence of five years is excessive given his productive work history, and that the trial court erred when it made his being placed on probation contingent on his making restitution when the amount of restitution was not established.
The record reflects that the trial court did not make a definitive ruling on Mr. Davis’s motion for reconsideration. Rather, the court stated that it would | ^reconsider the sentence imposed in the event that LSU Medical Center received restitution. No provision of law authorizes a trial court to defer ruling on a defendant’s motion to reconsider sentence. Because there has not been a final ruling on Mr. Davis’s motion, the issue of the exces-siveness of his sentence is not properly before this Court. Therefore, this case is remanded for a ruling on the motion for reconsideration of sentence.

ERRORS PATENT

A review of the record shows no errors patent except as discussed in Assignment of Error No. 3, above.
Accordingly, Mr. Davis’s conviction is affirmed, and this matter remanded for a ruling on the motion for reconsideration of sentence.
CONVICTION AFFIRMED; REMANDED.