NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ROBERT CURTIS and DARLENE          )
CURTIS,                            )
                                   )
    Appellants,            )
                                   )
v.                                 )          Case No. 2D13-689
                                   )
TOWER HILL PRIME INSURANCE CO.,    )
                                   )
    Appellee.              )
_____    )

Opinion filed January 14, 2015.

Appeal from the Circuit Court for Pasco
County; Linda H. Babb, Judge.

Raymond T. Elligett, Jr. of Buell &
Elligett, P.A., Tampa, and Michael
Laurato of Austin & Laurato, P.A.,
Tampa, for Appellants.

Anthony J. Russo and Ezequiel Lugo of
Butler Pappas Weihmuller Katz Craig
LLP, Tampa, for Appellee.


NORTHCUTT, Judge.

        Robert and Darlene Curtis sued Tower Hill Prime Insurance Co. in a dispute over a sinkhole insurance claim. They appeal a final summary judgment in favor of Tower Hill. We reverse and remand for further proceedings.

The Curtises owned a home that was insured under a policy issued by Tower Hill.[1]  During the policy term, the Curtises made a claim for damage under the policy's sinkhole coverage.  Tower Hill retained an engineering company to investigate, and the engineering company concluded that the cause was sinkhole activity, which was covered by virtue of a Sinkhole Loss Coverage endorsement.[2]  The insurance company obtained estimates to stabilize the land and building at a cost of $93,000 to $95,000.  In contrast, estimates secured by the Curtises ranged from $193,090 to $342,210.  These costs were in addition to that of making cosmetic repairs to the home, which was estimated by Tower Hill at $24,218 and by the Curtises at $36,818.

After receiving the repair estimates obtained by the Curtises, Tower Hill initiated a neutral evaluation, a statutory procedure applicable to sinkhole claims and referenced in the policy's sinkhole endorsement.  The property owners then filed suit in circuit court.  Their complaint alleged, in part, that the insurance company "denied the claim as a sinkhole loss and/or refused to honor the claim or pay benefits to the Plaintiffs or loss payees/third-party beneficiaries as provided for in the insurance policy."  In response to the complaint, Tower Hill filed three separate motions for summary judgment.  The circuit court granted two of the motions and denied the third.  Final judgment was thereafter entered in favor of Tower Hill.

We review summary judgments de novo, see Trinidad v. Fla. Peninsula Ins. Co., 121 So. 3d 433, 437 (Fla. 2013), applying the well-established standard that "[s]ummary judgment is proper if there is no genuine issue of material fact and if the

---

[1]The form of insurance is DP 00 03 07 88, copyright Insurance Services Office, Inc., 1988, 1992, with a Florida endorsement, form DW-0023-09 (04-09).

[2]Form IL-0502-00 (06/07).

moving party is entitled to a judgment as a matter of law," <u>Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000). For the following reasons, we conclude that Tower Hill's summary judgment motions were not well taken.

The two motions granted by the circuit court were captioned "No Payment Owed" and "Violation of Section 627.7074(10), Florida Statutes, and 'Suit Against Us' Provision," respectively. In the former motion, Tower Hill maintained that the claim was not ripe because no payment was due under the policy and, therefore, it had not breached the contract of insurance. This motion was based on the "Loss Payment" provision in the Florida endorsement, which provided as follows:

> **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:
> a. Twenty (20) days after we receive your proof of loss and reach written agreement with you; or
> b. Sixty (60) days after we receive your proof of loss; and:
>    **(1)** There is an entry of a final judgment; or
>    **(2)** There is a filing of an appraisal award or mediation settlement with us.
> c. Within 90 days of receiving notice of a property insurance claim. We will pay or deny such claims, or portions thereof, unless there are factors beyond our control that would reasonably prevent payments.

Tower Hill relies on <u>Geico General Insurance Co. v. Graci</u>, 849 So. 2d 1196, 1199 (Fla. 4th DCA 2003), for the proposition that "[a]n insurer's refusal to meet an insured's demand for payment under a policy is not a breach if no payment is then due." Thus, it contends, the Curtises cannot maintain a breach-of-contract suit until the time for payment under the loss-payment provision has come and gone without payment. But Tower Hill reads the complaint too narrowly and <u>Graci</u> too broadly.

Graci was a venue case, and it analyzed the plaintiff's cause of action to determine where it accrued for venue purposes. Id. at 1197. The Fourth District held that the claim was not for breach of contract; rather, it noted that the insured alleged an action "for a determination of her entitlement to, and amount of, damages." Id. at 1197. "Although Graci's action against Geico is, indeed, an action on the contract of insurance, it is not an action for a breach of that contract; rather, it is an action filed pursuant to the contract." Id. at 1199. Thus, the cause of action accrued in the county where the accident occurred.

Here, the Curtises filed an action on the insurance contract to determine their entitlement to and amount of damages. The loss-payment provision of the policy did not render the suit premature; indeed, that provision expressly contemplated that there might be a final judgment—presumably stemming from a lawsuit—before payment was due. But certainly, even when an insurance suit is filed prematurely, final summary judgment would not be the appropriate remedy where, as here, the insurance company has admitted coverage. See Shuck v. Bank of Am., N.A., 862 So. 2d 20, 24-25 (Fla. 2d DCA 2003) (discussing circumstances when premature suits should be either abated or dismissed without prejudice). The circuit court erred in granting this motion for summary judgment. See Panjikaran v. State Farm Fla. Ins. Co., 77 So. 3d 1278, 1280 (Fla. 2d DCA 2012) (reversing summary judgment when it was "unclear whether the parties dispute the amount of loss or a denial of coverage").

Tower Hill's other successful summary judgment motion contended that, by filing suit just after the insurer initiated a neutral evaluation, the Curtises violated the stay imposed by the neutral evaluation statute and breached the "Suit Against Us"

- 4 -

provision in the insurance contract.[3]  Tower Hill asserted that neutral evaluation was a condition precedent under the policy because it was referenced in the Sinkhole Loss Coverage endorsement.  It further argued that the Curtises' filing of suit violated the neutral evaluation stay and thereby violated the Suit Against Us provision in the Florida endorsement, which stated that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within five (5) years after the date of loss."

The legislature has established a statutory neutral evaluation process applicable to sinkhole insurance claims.  The statute includes a stay provision that provides as follows: "Regardless of when noticed, any court proceeding related to the subject matter of the neutral evaluation shall be stayed pending completion of the neutral evaluation and for 5 days after the filing of the neutral evaluator's report with the court."  § 627.7074(10), Fla. Stat. (2011).[4]  Notably, the statute does not by its terms preclude the filing of a lawsuit.  In contrast, the automatic stay provision in bankruptcy expressly prohibits the "commencement or continuation" of a judicial action against the debtor.  11 U.S.C. § 362(a)(1); see Barton-Malow Co. v. Gorman Co. of Ocala, Inc., 558

_____

[3]Conversely, however, Tower Hill argued that its own filing of summary judgment motions did not violate the statutory stay because the motions were not heard until after the stay was lifted.  Of course, the Curtises' lawsuit has never been heard.

[4]We cite the 2011 version of the stay provision because this court has found it procedural and thus appropriate for retroactive application.  See Citizens Prop. Ins. Corp. v. Trapeo, 136 So. 3d 670, 676 (Fla. 2d DCA 2014) (noting general rule that "statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract" (id. at 675 (quoting Menendez v. Progressive Express Ins. Co., 35 So. 3d 873, 876 (Fla. 2010) (internal quotation mark omitted)))).  In this particular case, however, the difference in statutory language has no effect.

So. 2d 519, 521 (Fla. 5th DCA 1990) (filing suit violates automatic stay in bankruptcy and renders complaint void as to debtor).  Likewise, Florida's medical malpractice law, which mandates the giving of a presuit notice to the defendant, expressly provides that "[n]o suit may be filed" during the 90-day presuit investigation period following the notice.  § 766.106(3)(a), Fla. Stat. (2014).  The neutral evaluation statute contains no such prohibition.  The Curtises' mere filing of suit did not violate the stay provision in the statute, and therefore, it did not violate the insurance policy.  The summary judgment on this basis was error.

As seen, the circuit court erred by granting summary judgment on the two motions described.  We must also discuss the motion that was denied.  In a motion captioned "Failure to Satisfy Post-Loss Obligations," Tower Hill asserted that the Curtises breached the policy by failing to comply with a duty after loss and that this breach negated any recovery under the policy.  It advances this argument on appeal as a right-for-the-wrong-reason rationale for affirming the summary judgment.  See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644-45 (Fla. 1999) (stating the "tipsy coachman" rule).

The insurance policy's Florida endorsement imposed on the insured certain "duties after loss," including a duty to "show the damaged property" "as often as [Tower Hill] reasonably require[d]."[5]   It is undisputed that the Curtises met this duty with

---

[5]**Duties After Loss**
In case of a loss to covered property, you must see that the
following are done:
a.  Give prompt notice to us or our agent;
. . . .
d.  Protect the property from further damage.  If repairs to
the property are required, you must:

- 6 -

respect to Tower Hill's engineer, but they did not cooperate with a contractor retained by

the insurer to estimate cosmetic damage to the home.  Tower Hill has not contended

that the Curtises failed to comply with any other enumerated duty.

---

                **(1)** Make reasonable and necessary repairs to protect the property; and
                **(2)** Keep an accurate record of repair expenses;

    e.  Cooperate with us in the investigation of a claim;
    f.  Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory;
    g.  As often as we reasonably require:
                **(1)** Show the damaged property;
                **(2)** Provide us with records and documents we request and submit to recorded statements and examinations under oath, while not in the presence of any other "insured", and sign the same.

                Also, your representative, including any public adjuster engaged on your behalf, must each submit to recorded statements and examinations under oath, while not in the presence of any other "insured", and sign the same.
                . . . .

    h.  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
                **(1)** The time and cause of loss;
                **(2)** The interests of the "insureds" and all others in the property involved and all liens on the property;
                **(3)** Other insurance which may cover the loss;
                **(4)** Changes in title or occupancy of the property during the term of the policy;
                **(5)** Specifications of damaged buildings and detailed repair estimates;
                **(6)** The inventory of damaged personal property described in **4.f.** above;
                **(7)** Receipts for additional living expenses incurred and records that support the fair rental value loss;
                . . . .

The circuit court correctly denied summary judgment on this ground for two reasons. First, Tower Hill did not show that it was prejudiced by the Curtises' lack of cooperation, which is required before an insured may be held to have forfeited benefits by materially breaching the insurance policy's cooperation clause. See Am. Fire & Cas. Co. v. Collura, 163 So. 2d 784, 792-94 (Fla. 2d DCA 1964) (distinguishing breach of notice-of-claim condition, where prejudice to insurer is presumed, from breach of cooperation condition, where insurer must show it was substantially prejudiced by material breach, notwithstanding that policy purported to classify cooperation condition as condition precedent); see also Bankers Ins. Co. v. Macias, 475 So. 2d 1216 (Fla. 1985).

Second, the Curtises partially complied by cooperating with the investigation by Tower Hill's engineer on the more significant aspect of damages. "[I]f the insured cooperates to some degree or explains his failure to comply, whether the insured materially breached the policy remains a question for the fact finder." Jyurovat v. Universal Prop. & Cas. Ins. Co., 84 So. 3d 1238, 1241 (Fla. 2d DCA 2012); see also Makryllos v. Citizens Prop. Ins. Corp., 103 So. 3d 1032, 1034 (Fla. 2d DCA 2012) ("Such partial cooperation can raise a fact question concerning whether the insurer should be able to declare a breach of the insurance contract that precludes recovery.").

We reverse the summary judgment and remand for further proceedings.

KHOUZAM and SLEET, JJ., Concur.

- 8 -