DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ONE CALL PROPERTY SERVICES INC.** a/a/o **WILLIAM HUGHES,**
Appellant,

v.

**SECURITY FIRST INSURANCE COMPANY,**
Appellee.

No. 4D14-424

[ May 20, 2015 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph George Marx, Judge; L.T. Case No. 502013CA010316.

Susan W. Fox of Fox & Loquasto, P.A., Orlando, and Scott G. Millard of Cohen Battisti, Attorneys at Law, Winter Park, for appellant.

Andrew A. Labbe and David J. Salmon of Groelle & Salmon, P.A., Tampa, for appellee.

Maria Elena Abate and Matthew C. Scarfone of Colodny, Fass, Talenfeld, Karlinsky, Abate & Webb, P.A., Fort Lauderdale, for Amici Curiae-Florida Property & Casualty Association and Florida Insurance Council.

TAYLOR, J.

One Call Property Services ("One Call") appeals a final order dismissing a complaint that it filed, as an alleged assignee of an insured on a homeowners' policy, against Security First Insurance for breach of contract. Because we conclude that the trial court erred in dismissing One Call's complaint based on the anti-assignment and loss payment provisions of the insurance policy, we reverse.

One Call, as an alleged assignee of an insured on a homeowners' insurance policy, brought a complaint for breach of contract against the insurer, Security First, alleging that One Call performed emergency water removal services for the insured following an August 2012 water event, that the insured had assigned his right to insurance proceeds as payment,

and that Security First refused to reimburse it adequately for the services provided. In the alternative, the complaint alleged that One Call had an assignment in equity based on the services it rendered. Attached to the complaint was a copy of the assignment, which stated in relevant part:

> I, the Owner, hereby assign any and all insurance rights, benefits, and proceeds under any applicable insurance policies to One Call. I make this assignment in consideration of One Call's agreement to perform services and supply materials and otherwise perform its obligations under this contract, including One Call not requiring full payment at the time of service. I intend to transfer all insurance rights to One Call, including any causes of action which exist or may exist in the future.

One Call did not attach a copy of the policy to the complaint. Instead, One Call alleged that a copy of the policy would be obtained "through the discovery process" and would "be filed in support of this action at that time." One Call also alleged compliance with all conditions precedent to recovery under the policy.

Security First moved to dismiss, arguing that One Call lacked standing to maintain the lawsuit and that the complaint failed to state a cause of action. Security First advanced multiple arguments in support of its position that the assignment was invalid under the terms of the policy and Florida law. Attached to the motion to dismiss was a certified copy of the policy.

One Call filed a written response to the motion to dismiss, arguing that the motion impermissibly went beyond the four corners of the complaint and asserting various reasons for upholding the validity of the assignment.

The trial court held a hearing on the motion to dismiss. At the hearing, counsel for One Call focused on the argument that "the nonassignment provision of the policy when read in conjunction with the loss payment provision of the policy precludes the plaintiff, as an assignee, from bringing a lawsuit to determine the amount of the loss or . . . what is due under the policy." The trial court ultimately granted the motion to dismiss on the basis of this argument, noting that the same ruling had been made in a similar case and that the court was "going to stay consistent." The court later entered a final order dismissing the complaint with prejudice. One Call appealed the dismissal.

"A trial court's order granting a motion to dismiss is reviewed de novo."

*Edwards v. Landsman,* 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

In ruling on a motion to dismiss, a trial court is limited to the four corners of the complaint and its incorporated attachments. *U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76 (Fla. 4th DCA 2003). But where the terms of a legal document are impliedly incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss. *See Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So. 3d 1246, 1249 (Fla. 2d DCA 2011) (rejecting argument that the trial court erred by considering the contents of a settlement agreement that was attached to a motion to dismiss: "[I]n this case, the complaint refers to the settlement agreement, and in fact, Veal's standing to bring suit is premised on the terms of that agreement. Accordingly, since the complaint impliedly incorporates the terms of the agreement by reference, the trial court was entitled to review the terms of that agreement to determine the nature of the claim being alleged.").

Here, the trial court did not err in considering the contents of the insurance policy that was filed in connection with the insurer's motion to dismiss. The complaint refers to the policy, and One Call's standing to bring suit is premised on an assignment of the policy. Accordingly, because the complaint impliedly incorporates the policy by reference, the trial court was entitled to review the policy in ruling on the motion to dismiss.[1]

On the merits of the issue, One Call argues that the trial court erred as a matter of law in dismissing its complaint based on the anti-assignment and loss payment provisions of the policy. Stated succinctly, One Call maintains that: (1) post-loss assignments of insurance proceeds are valid under Florida law even if the policy contains an anti-assignment clause; (2) the right of payment accrues on the date of the loss; and (3) the loss payment provision does not preclude an assignment of benefits and has never been construed to have any bearing on the issue of assignments.

---

[1] While we agree that some of Security First's arguments against the validity of the assignment probably cannot be resolved on a motion to dismiss, we interpret the trial court's ruling as being based exclusively on Security First's argument concerning the anti-assignment and loss payment provisions of the insurance policy. Moreover, in this case, in contrast to *Nextgen Restoration Inc. v. Citizens Property Ins. Corp.*, 126 So. 3d 1255 (Fla. 2d DCA 2013), the policy was placed in the record, and it was incorporated by reference in the complaint, so the trial court was permitted to consider it in ruling on the legal issue that formed the basis for the dismissal.

"All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment." *Kohl v. Blue Cross & Blue Shield of Fla., Inc.*, 988 So. 2d 654, 658 (Fla. 4th DCA 2008). Once an assignment has been made, "the assignor no longer has a right to enforce the interest because the assignee has obtained all rights to the thing assigned." *Continental Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (citations and internal quotation marks omitted). By statute, an insurance policy "may be assignable, or not assignable, as provided by its terms." § 627.422, Fla. Stat. (2012).

A chose in action[2] arising out of contract is assignable and "may be sued upon and recovered by the assignee in his own name and right." *Spears v. W. Coast Builders' Supply Co.*, 101 Fla. 980, 983, 133 So. 97, 98 (1931). "A claim on an insurance policy is a chose in action and is assignable as such." *United Cos. Life Ins. Co. v. State Farm and Fire Cas. Co.*, 477 So. 2d 645, 646 (Fla. 1st DCA 1985). Where there is no provision forbidding assignment, "an insurance policy may be assigned as any other chose in action." *Kohl v. Blue Cross & Blue Shield of Fla., Inc.*, 955 So. 2d 1140, 1143 (Fla. 4th DCA 2007).

Even when an insurance policy contains a provision barring assignment of the policy, an insured may assign a post-loss claim. *See W. Fla. Grocery Co. v. Teutonia Fire Ins. Co.*, 74 Fla. 220, 224, 77 So. 209, 210-11 (1917) ("The policy was assigned after loss, and it is a well-settled rule that the provision in a policy relative to the consent of the insurer to the transfer of an interest therein does not apply to an assignment after loss."); *Lexington Ins. Co. v. Simkins Indus., Inc.*, 704 So. 2d 1384, 1386 n.3 (Fla. 1998) ("[The insurer] concedes that an insured may assign insurance proceeds to a third party after a loss, even without the consent of the insurer."); *Accident Cleaners, Inc. v. Universal Ins. Co.*, 2015 WL 1609973, *2 (Fla. 5th DCA Apr. 10, 2015) ("[The insurer's] argument ignores that the right to recover is freely assignable after loss and that an assignee has a common-law right to sue on a breach of contract claim. Dating back to 1917, the Florida Supreme Court recognized that provisions in insurance contracts requiring consent to assignment of the policy do not apply to assignment after loss."); *Citizens Prop. Ins. Corp. v. Ifergane*, 114 So. 3d 190, 195 (Fla. 3d DCA 2012) ("Post-loss insurance claims are freely assignable without the consent of the insurer."); *Better Constr., Inc. v. Nat'l Union Fire Ins. Co.*, 651 So. 2d 141, 142 (Fla. 3d DCA 1995) ("[A] provision against assignment of an insurance policy does not

---

[2] A "chose in action" is the "right to bring an action to recover a debt, money, or thing." *Black's Law Dictionary* (9th ed. 2009).

bar an insured's assignment of an after-loss claim."); *Gisela Invs., N.V. v. Liberty Mut. Ins. Co.*, 452 So. 2d 1056, 1057 (Fla. 3d DCA 1984) ("A provision in a policy of insurance which prohibits assignment thereof except with consent of the insurer does not apply to prevent assignment of the claim or interest in the insurance money then due, after loss."); *see also NextGen Restor., Inc. v. Citizens Prop. Ins. Corp.*, 126 So. 3d 1255, 1256-57 (Fla. 2d DCA 2013) (stating in dicta: "[The anti-assignment clause] does not appear to prevent an assignment of benefits or proceeds owing by virtue of a claim arising under the policy. We do not reach the validity of this specific assignment of insurance benefits, but we note that other cases seem to permit assignees to bring similar actions.").

Despite the well-settled case law allowing post-loss assignments of insurance claims, Security First argues the assignment is invalid pursuant to the policy's anti-assignment and loss payment provisions. Security First maintains that the assignment impermissibly sought to assign unaccrued rights under the policy. Essentially, Security First argues that, at the time the assignment was executed, the insured had nothing to assign because at that time there were no benefits due and owing to the insured under the policy.

Security First's argument is based upon the loss payment clause of the policy, which states:

> **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be paid upon the earliest of the following:
>
> **a.** 20 days after:
>
> (1) We receive your written proof of loss and reach a written, executed agreement or settlement with you according to the terms of the written agreement; or
>
> **b.** 60 days after we receive your written proof of loss and:
>
> (1) There is an entry of a final judgment or, in the case of an appeal from such judgment, within 60 days from and after the affirmance of the same by the appellate court; or
> (2) Written executed mediation settlement with you according to the terms of the written mediation settlement; or

5

**c.** Within 90 days after we receive notice of an initial claim "reopened claim" or "supplemental claim" from you, we will pay or deny such claim or a portion of the claim unless the failure to pay such claim or portion of claim is caused by factors beyond our control which reasonably prevent such payment.

The issue we confront is whether payment must be due under the loss payment provision before an insured may assign a post-loss claim under the policy. We find that the loss payment provision "falls far short of creating a contractual bar to assignment." *Cf. Kohl*, 988 So. 2d at 658 (language stating that "[b]enefits will be paid directly to you" fell "far short of creating a contractual bar to assignment").

The Second District's opinion in *Curtis v. Tower Hill Prime Ins. Co.*, 154 So. 3d 1193 (Fla. 2d DCA 2015), while not directly on point, provides useful guidance on this issue. There, the Second District rejected an insurer's argument that the insureds could not "maintain a breach-of-contract suit until the time for payment under the loss-payment provision has come and gone without payment." *Id.* at 1196. The Second District held that "[t]he loss-payment provision of the policy did not render the suit premature; indeed, that provision expressly contemplated that there might be a final judgment—presumably stemming from a lawsuit—before payment was due." *Id.*

Following the reasoning of *Curtis*, we hold that a standard loss payment provision in an insurance policy does not preclude an assignment of a post-loss claim, even when payment is not yet due. The loss payment clause merely addresses the timing of the payment and expressly contemplates that a lawsuit could occur before payment is due. We decline to interpret it as affecting the validity of a post-loss assignment.

We therefore conclude that an assignable right to benefits accrues on the date of the loss, even though payment is not yet due under the loss payment clause. *Cf. In re Surfside Resort & Suites, Inc.*, 344 B.R. 179, 189 (Bkrtcy. M.D. Fla. 2006) ("Once the Hotel had sustained property damage, [the insurer] was already responsible for payment of whatever claim Debtor asserted. Hence, once the damage affected the property, [the insurer's] obligation to pay originated."); *Antal's Rest., Inc. v. Lumbermen's Mut. Cas. Co.*, 680 A.2d 1386, 1389 (D.C. 1996) ("Before loss, the insured has only an inchoate or a contingent right to compensation, but after loss that right has 'become absolute' and transferable without consent, since the relationship of insured and insurer is now one of 'creditor and debtor' and

the policy [is] no longer 'significant except as evidence of the existence and amount of the debt.'") (citation and internal alteration omitted); *cf. also Levy v. Travelers Ins. Co.*, 580 So. 2d 190, 191 (Fla. 4th DCA 1991) (stating that an insurer's obligation to pay first-party PIP benefits arose as the loss was incurred, but also stating that the insurer "owed no contractual obligation to pay first-party benefits" at the time of the accident and that the cause of action to recover unpaid benefits accrued when the payment was overdue).

Furthermore, even assuming an insured's right to benefits does not accrue until payment is due under the loss payment provision, there is no reason why an insured could not assign an unaccrued right to benefits under the policy, so long as the assignment took place after the loss. The fact that a right is unaccrued does not necessarily prevent its assignment before the right accrues. *See* Restatement (Second) of Contracts § 320 ("The fact that a right is . . . conditional does not prevent its assignment before the condition occurs.").

Nor can the assignment be invalidated on the theory that it attempts to assign a contractual "duty to adjust" from the insured to a third party. In arguing that the insured owes a duty to adjust the loss, the insurers rely upon the language of the loss payment provision stating that "[w]e will adjust the loss with you." Grammatically, "we" is the subject of the sentence and refers to the insurer, while "you" is the indirect object of the sentence and refers to the insured. Although this language contemplates the insured's participation in the adjustment process, it does not impose a *duty* on the insured to adjust the loss. In fact, a "duty to adjust" is not among the insured's duties in the section of the policy listing the insured's Duties After Loss.

An insured is not an "adjuster" and does not "adjust" losses. To "adjust" means "[t]o determine the amount that an insurer will pay an insured to cover a loss." *Black's Law Dictionary* (9th ed. 2009). An insured does not determine the amount that the insurer will pay to cover the loss, nor does an insured fit within any commonly recognized definition of "adjuster."

In short, as long as the insured complies with all policy conditions, a third-party assignee may recover benefits on a covered loss. *Cf. Shaw v. State Farm Fire and Cas. Co.*, 37 So. 3d 329, 332 (Fla. 5th DCA 2010) (stating that "[a]ssignment of a right to payment under a contract does not eliminate the duty of compliance with contract conditions, but a third-party assignee is not liable for performance of any duty under a contract"),

*disapproved on other grounds by Nunez v. Geico Gen. Ins. Co.*, 117 So. 3d 388 (Fla. 2013).

Turning to the practical implications of this case, we note that this issue boils down to two competing public policy considerations. On the one side, the insurance industry argues that assignments of benefits allow contractors to unilaterally set the value of a claim and demand payment for fraudulent or inflated invoices. On the other side, contractors argue that assignments of benefits allow homeowners to hire contractors for emergency repairs immediately after a loss, particularly in situations where the homeowners cannot afford to pay the contractors up front.

Our court is not in a position, however, to evaluate these public policy arguments. There is simply insufficient evidence in the record in this case—or in any of the related cases—to decide whether assignments of benefits are significantly increasing the risk to insurers. If studies show that these assignments are inviting fraud and abuse, then the legislature is in the best position to investigate and undertake comprehensive reform.

For the foregoing reasons, we reverse the dismissal of the complaint and remand for further proceedings consistent with this opinion. We emphasize, however, that we decline to reach any of Security First's other challenges to the assignment, including whether the assignment violates the public adjuster statute or the statute governing insurable interests,[3] or whether the assignment is a partial assignment that cannot be enforced against Security First without its consent. The trial court should address these issues in the first instance. *See Stark v. State Farm Fla. Ins. Co.*, 95 So. 3d 285, 289 n.4 (Fla. 4th DCA 2012) (declining to apply the tipsy coachman doctrine and explaining that an appellate court should not ordinarily decide issues not ruled on by the trial court in the first instance).

*Reversed and Remanded.*

DAMOORGIAN, C.J., and MAY, J., concur.

*        *        *

---

[3] For the trial court's benefit on remand, we note that the Fifth District recently held that a post-loss assignee is not required to have an insurable interest at the time of loss. *See Accident Cleaners, Inc. v. Universal Ins. Co.*, 2015 WL 1609973 (Fla. 5th DCA Apr. 10, 2015). The court explained that the legislature, in enacting section 627.405, Florida Statutes, "did not state that it was displacing well-settled common law of (1) the free assignability of contractual rights to recover or (2) the inability for insurers to restrict post-loss assignments." *Id.* at *2.

*Not final until disposition of timely filed motion for rehearing.*