MAKAR, J.
Security First Insurance Company appeals the decision of Florida’s regulatory agency overseeing the insurance industry, the Office of Insurance Regulation (“OIR”), which denied its requests to amend a section of its homeowner’s policies that would restrict the ability of policyholders to assign post-loss rights without the company’s consent. We affirm.
Security First is a property and casualty insurance company licensed to transact insurance in Florida. Before delivering or issuing its policy forms, Security First is required by statute to file all forms it intends to use in Florida with the OIR for its approval. It did so on June 24, 2013, filing three proposed forms that would amend the assignment language in its “Homeowner’s, Tenant Homeowner’s, and Dwelling Fire Insurance” policies. Security First’s proposed language said: “Assignment of this policy or any benefit or post-loss right will not be valid unless we give our written consent.”
On July 22, 2013, OIR issued notices of disapproval of the changes because they would “violate the intent and meaning of Sections 627.411(l)(a), 627.411(l)(b), and 627.411(l)(e), Florida Statutes!, and] contain[ed] language prohibiting the assignment of a post loss claim under the policy, which is contrary to Florida law.” Security First requested an informal hearing, the legal issue being whether post-loss rights under an insurance policy are freely assignable without the consent of the insurer, and in turn, whether OIR erred in disapproving the new language, which required that Security First give written *628 consent for. an assignment of post-loss rights.
The hearing officer upheld OIR’s decision, reasoning that it was not clearly erroneous because a “restriction on assignments of post-loss rights in an insurance policy would be misleading as it would lead the policyholder to believe that the validity of such assignment was contingent upon the written consent of the insurer, contrary to Florida law.” Security First appeals from the final order adopting these findings and conclusions.
The gist of this dispute is whether policyholders might be misled by the proposed change to the policy language, believing that Security First’s consent was required for assignment of their post-loss rights, when Florida law holds to the contrary. On this point we find an unbroken string of Florida cases over the past century holding that policyholders have the right to assign such claims without insurer consent. See, e.g., W. Fla. Grocery Co. v. Teutonia Fire Ins. Co., 74 Fla. 220, 77 So. 209, 210-11 (1917) (“[I]t is a well-settled rule that the provision in a policy relative to the consent of the insurer to the transfer of an interest therein does not apply to an assignment after loss. It is true that the assignment in this case contains the words ‘subject to the consent of the [insurance company]’ but, as such consent was not necessary to its validity, the condition was superfluous.”); see also Lexington Ins. Co. v. Simkins Indus., Inc., 704 So.2d 1384, 1386 n. 3 (Fla.1998) (insurer conceded “that an insured may assign insurance proceeds to a third party after a loss, even without the consent of the insurer.”); One Call Prop. Servs. Inc. v. Sec. First Ins. Co., 165 So.3d 749 (Fla. 4th DCA 2015) (“Even when an insurance policy contains a provision barring assignment of the policy, an insured may assign a post-loss claim.”) (collecting cases); Citizens Prop. Ins. Corp. v. Ifergane, 114 So.3d 190 (Fla. 3d DCA 2012) (“Post loss insurance claims are freely assignable without the consent of the insurer.”); Better Constr., Inc. v. Nat’l Union Fire Ins., 651 So.2d 141, 142 (Fla. 3d DCA 1995) (“[A] provision against assignment of an insurance policy does not bar an insured’s assignment of an after-loss claim.”). Under our standard of review, OIR did not interpret the law on this issue in error; it got it right. See Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 847 (Fla. 1st DCA 2002) (“The standard of review of an agency decision based upon an issue of law is whether the agency erroneously interpreted the law and, if so, whether a correct interpretation compels a particular action.”). Affirmance of its order is required.
That said, we are not unmindful of the concerns that Security First expressed in support of its policy change, providing evidence that inflated or fraudulent post-loss claims filed by remediation companies exceeded by thirty percent comparable services; that policyholders may sign away their rights without understanding the implications; and that a “cottage industry” of “vendors, contractors, and attorneys” exists that use the “assignments of benefits and the threat of litigation” to “extract higher payments from insurers.” These concerns, however, are matters of policy that we are ill-suited to address. As the Fourth District recently wrote:
Turning to the practical implications of this case, we note that this issue boils down to two competing public policy considerations. On the one side, the insurance industry argues that assignments of benefits allow contractors to unilaterally set the value of a claim and demand payment for fraudulent or inflated invoices. On the other side, contractors argue that assignments of benefits allow homeowners to hire con *629 tractors for emergency repairs immediately after a loss, particularly in situations where the homeowners cannot afford to pay the contractors up front. Our court is not in a position, however, to evaluate these public policy arguments. There is simply insufficient evidence in the record' in this case — or in any of the related cases — to decide whether assignments of benefits are significantly increasing the risk to insurers. If studies show that these assignments are inviting fraud and abuse, then the legislature is in the best position to investigate and undertake comprehensive reform.
One Call Prop. Services, 165 So.3d at 755. We agree with these sentiments, and reiterate that the policy arguments and evi-dentiary basis for them put forth by Security First are more properly addressed to the Legislature.
AFFIRMED.
ON MOTIONS FOR REHEARING AND CERTIFICATION
Security First Insurance Company asks that we rehear this matter and certify conflict with decisions of the Fourth District [1] on the issue of whether an insured may assign post-loss rights under a policy without the insurer’s consent. Finding no basis for rehearing and no inconsistency, let alone conflict, with the Fourth District’s eases, we deny both motions. See, e.g., One Call Prop. Servs., Inc. v. Sec. First Ins. Co., 165 So.3d 749, 753 (Fla. 4th DCA 2015) (“Even when an insurance policy contains a provision barring assignment of the policy, an insured may assign a post-loss claim.”).
Security First also asks that we certify as a question of great public importance, whether an insurance policy’s prohibition of an insured’s assignment of “any benefit or post-loss right” without the insurer’s consent is “void as contrary to the Florida Statutes or to this state’s ‘public policy’ ”? As recounted in our merits opinion, a century of precedents from Florida’s courts— including, most recently, the Fourth District in One Call — has said that an insured may assign post-loss rights without the insurer’s consent. See, e.g., W. Fla. Grocery Co. v. Teutonia Fire Ins. Co., 74 Fla. 220, 77 So. 209, 210-11 (Fla.1917). The original basis for this principle is a bit murky, the supreme court in Teutonia Fire simply saying it was a “well-settled rule” without much discussion. Id. at 210. But its vitality has persevered since that time. We recognize that “the failure to •certify a question eliminates this potential basis for the Supreme Court of Florida’s jurisdiction,” Harry Lee Anstead et ah, The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L.Rev. 431, 527 (2005), but we see little indication that supreme court review is warranted given the overall consistency in the precedents.
That said, we note one exception from this well-settled legal principle: health care insurance policies that prohibit insureds from using and assigning post-loss rights or benefits to health care providers outside an insurer’s established network. As the Fourth District noted in upholding an anti-assignment provision in a health insurance policy: “[i]f a patient could obtain care from a non-participating [provider] and assign it the patient’s right to be reimbursed under a group policy, in the teeth of an anti-assignment clause, this direct payment inducement to become a participating [provider] would be weak *630 ened or eliminated.” Kohl, 955 So.2d at 1145 (citation omitted). The court deemed it permissible because the anti-assignment clause had beneficial and important economic ramifications on the provision of health care services through lower-cost provider networks; it was good public policy as reflected in “Florida statutes [that] authorize prohibitions on assignment of both health insurance benefits and health insurance contracts.” 955 So.2d at 1143 (citing § 627.638(2), Fla. Stat. (2005)). The Fourth District recognized that “[p]ublic policy may limit the parties’ freedom to incorporate an anti-assignment clause into a contract” but concluded that “public policy favors the type of anti-assignment clause at issue in this case.” Id. at 1144. Security First, like the insurer in Kohl, says that public policy favors the type of limitation it wants to impose on its insureds because the legal principle at issue has had negative consequences for the insurance industry and its insureds in recent years, mostly as to water remediation companies. Nevertheless, it cannot point to a statute, such as the health care ones cited in Kohl, that directly supports such a policy. We again conclude, therefore, that it is for the legislative branch to consider this public policy problem, not the courts, at this juncture. Legislative review provides a more detailed inquiry into the current situation in the industry and greatér flexibility in achieving meaningful reforms, if deemed necessary. On the other hand, courts are ill-equipped to pass judgment on the merits of the policy debate at hand, and less likely to be able to formulate a remedy that is mutually beneficial to insureds and insurers. Security First’s motions are thereby denied.
RAY and BILBREY, JJ., concur.

. One Call Prop. Servs., Inc. v. Sec. First Ins. Co., 165 So.3d 749 (Fla. 4th DCA 2015); Kohl v. Blue Cross & Blue Shield of Fla., Inc., 988 So.2d 654 (Fla. 4th DCA 2008); Kohl v. Blue Cross & Blue Shield of Fla., Inc., 955 So.2d 1140 (Fla. 4th DCA 2007); and Classic Concepts, Inc. v. Poland, 570 So.2d 311 (Fla. 4th DCA 1990).