LaROSE, Judge.
 

 George Jyurovat appeals a final summary judgment in favor of Universal Property and Casualty Insurance Company. The trial court concluded that he breached an insurance policy by terminating an appraisal umpire and by filing suit before completing the appraisal process. Thus, according to the trial court, Mr. Jyurovat’s actions rendered the insurance policy ineffective and relieved Universal of its contractual obligations. The trial court erred in entering the summary judgment. Genuine issues of material fact remained as to whether Mr. Jyurovat materially breached the policy. We reverse.
 

 In January 2008, fire damaged Mr. Jyu-rovat’s house. He submitted a claim to Universal. Aplin Peer & Associates, Universal’s adjuster, estimated the cost of structural repair at $119,444.88. Universal obtained a second estimate from Hammer Construction for $144,866.62. Mr. Jyuro-vat obtained a $617,226 estimate to tear down and rebuild the structure; he secured an estimate of $311,760 to repair the damage without razing. In April 2008, the City of Naples advised Mr. Jyurovat that if structural repairs exceeded $121,046, the house would have to meet current flood elevation codes. The insurance policy provided for payment of ordinance or law expenses of up to fifty percent of the structure’s $400,000 insured value—
 
 *1240
 
 $200,000. Universal concluded that the damage amount was $119,444.88. This amount did not include overhead and profit — two components of loss routinely included in estimates of structural damage severe enough to require repair by a contractor.
 
 See Goff v. State Farm Fla. Ins. Co.,
 
 999 So.2d 684, 689-90 (Fla. 2d DCA 2008). Mr. Jyurovat contended that adding ten percent for each would have raised the estimate to $143,333.86, above the City’s maximum repair amount, and might have resulted in a constructive total loss if the repaired structure would not meet flood elevation codes. Unable to reach a resolution with Universal, Mr. Jyurovat disagreed and demanded appraisal.
 

 The insurance policy contains the following pertinent provisions:
 

 Section I — Conditions
 

 [[Image here]]
 

 6. Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in a state where the “residence premises” is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
 

 Each party will:
 

 a. Pay its own appraiser; and
 

 b. Bear the other expenses of the appraisal and umpire equally.
 

 [[Image here]]
 

 8. Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.
 

 Mr. Jyurovat appointed Brad Bateman as his appraiser; Universal appointed Warren Aplin. Those two appraisers selected Robert Dawson as the umpire. The appraisers inspected the structure in September 2008, and Mr. Dawson promised a decision within three weeks. No decision issued. In early November 2008, Mr. Dawson promised a decision within the next week. Nothing came. Two weeks later, Mr. Dawson informed the appraisers that he was having difficulty “tracking down the information for the code issues.” Apparently, the City of Naples did not have an elevation certificate on file. On December 5, 2008, Mr. Dawson advised the appraisers that he would have a decision by December 8. Again, nothing. We can only assume that Mr. Dawson encountered problems getting flood elevation information from the City of Naples. Be that as it may, at the end of the day on December 8, Mr. Bateman, over Mr. Aplin’s objection, purported to unilaterally terminate Mr. Dawson as umpire. Mr. Bateman wrote to Mr. Aplin and advised him that Mr. Jyuro-vat would retain counsel and petition the court to appoint a new umpire.
 

 On December 29, Mr. Jyurovat sued Universal. In Count I, he sought declaratory relief to determine whether the structure was a total loss, whether Universal could withhold overhead and profit, whether the dismissal of the umpire was proper, whether the loss payable under the ordinance or law provision was ripe for appraisal, and he sought damages. Count II sought the appointment of a new umpire.
 

 
 *1241
 
 As an affirmative defense, Universal asserted that Mr. Jyurovat obstructed and failed to complete the appraisal process by terminating the umpire without just cause. Universal also counterclaimed for breach of contract. Mr. Jyurovat denied terminating the umpire without just cause. He argued that he tried to comply with the appraisal provision but that, after he moved to replace the umpire, Universal raised coverage issues not subject to appraisal. Mr. Jyurovat filed an amended complaint seeking damages for breach of contract.
 

 After some discovery, Universal moved for summary judgment on its claim that Mr. Jyurovat improperly terminated the umpire and filed the lawsuit before completing the appraisal. Mr. Jyurovat argued that his declaratory judgment action did not violate the “no suit” clause in the insurance policy. He conceded that the termination was technically improper but argued that Universal then effectively denied coverage by alleging breach of contract by Mr. Jyurovat. He argued that the policy did not allow Universal to both deny a claim and require appraisal and that the denial of his claim waived any condition precedent to suit. The trial court granted summary judgment for Universal, ruling that Mr. Jyurovat breached the policy by unilaterally terminating the umpire and failing to complete the appraisal before filing suit.
 

 We review an order granting summary judgment de novo.
 
 Am. Strategic Ins. Co. v. Lucas-Solomon,
 
 927 So.2d 184, 186 (Fla. 2d DCA 2006). The interpretation of an insurance policy is also subject to de novo review.
 
 Id.
 

 Mr. Bateman, whether or not he was acting for Mr. Jyurovat, lacked authority to fire the umpire. If he was dissatisfied with the pace of the umpire’s efforts, the law provided alternatives.
 
 See, e.g., State Farm Fla. Ins. Co. v. Seville Place Condo. Ass’n,
 
 74 So.3d 105, 107 (Fla. 3d DCA 2011) (insurer filed “emergency motion and affidavit seeking removal of the neutral umpire previously appointed by the court”);
 
 Preferred Nat’l Ins. Co. v. Miami Springs Golf Villas, Inc.,
 
 789 So.2d 1156, 1157 (Fla. 3d DCA 2001) (insurer moved the trial court to interview or replace allegedly partisan umpire);
 
 Weinger v. State Farm Fire & Cas. Co.,
 
 620 So.2d 1298, 1299 (Fla. 4th DCA 1993) (insureds moved to recuse umpire selected by parties’ appraisers).
 

 An insured’s refusal to comply with a presuit condition may be a willful and material breach of an insurance contract that precludes recovery as a matter of law.
 
 Goldman v. State Farm Fire Gen. Ins. Co.,
 
 660 So.2d 300, 303, 306 (Fla. 4th DCA 1995). However, if the insured cooperates to some degree or explains his failure to comply, whether the insured materially breached the policy remains a question for the fact finder.
 
 Starling v. Allstate Floridian Ins. Co.,
 
 956 So.2d 511, 513 (Fla. 5th DCA 2007) (citing
 
 Haiman v. Fed. Ins. Co.,
 
 798 So.2d 811, 812 (Fla. 4th DCA 2001));
 
 Schnagel v. State Farm Mut. Auto. Ins. Co.,
 
 843 So.2d 1037, 1038 (Fla. 4th DCA 2003);
 
 El-Ad Enclave at Miramar Condo. Ass’n v. Mt. Hawley Ins. Co.,
 
 752 F.Supp.2d 1282, 1286-87 (S.D.Fla.2010). “[I]f an insured has not demonstrated willful disregard of the policy preconditions, courts have either stayed the action or dismissed the suit without prejudice in order to allow belated compliance.”
 
 Mt. Hawley,
 
 752 F.Supp.2d at 1287 (citing
 
 Cent. Metal Fabricators v. Travelers Indem. Co. of Am.,
 
 703 So.2d 1251, 1251 (Fla. 3d DCA 1998);
 
 Southgate Gardens Condo. Ass’n v. Aspen Specialty Ins. Co.,
 
 622 F.Supp.2d 1332, 1337 (S.D.Fla.2008)).
 

 
 *1242
 
 Mr. Jyurovat cooperated in the appraisal process from May 2008 until December 2008. He did not end the appraisal process. He just wanted a new umpire. The insurance policy does not address a breakdown in the appraisal process. We can discern from our record no basis on which Mr. Jyurovat’s appraiser could remove the umpire. Universal made no effort to appoint a new appraiser but asked that the current appraiser stay in place.
 

 The sole basis for the summary judgment was the purported termination of the umpire and the filing of a declaratory judgment action. The issue of whether this constituted a material breach, if at all, of the policy is a question for resolution by the fact finder. Summary judgment was improper. Accordingly, we reverse and remand for further proceedings.
 

 Reversed and remanded.
 

 SILBERMAN, C.J., and DAVIS, J., Concur.