KELLY, Judge.
Maricela Cespedes brought an action against her property insurer, Florida Peninsula Insurance Company, for failure to pay benefits regarding her claim for sinkhole damages. Florida Peninsula moved for summary judgment arguing that Ms. Cespedes’ policy excluded sinkhole damage. Ms. Cespedes countered with a motion for partial summary judgment in which she argued that her homeowner’s insurance policy was ambiguous regarding sinkhole coverage. The trial court granted her motion and denied Florida Peninsula’s motion. Florida Peninsula filed a timely notice of appeal from the final judgment awarding Ms. Cespedes $125,400. Because we conclude that Ms. Cespedes’ policy unambiguously excluded sinkhole damage, we reverse.
The policy Florida Peninsula issued to Ms. Cespedes contained an endorsement stating:
YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE *583 LOSSES FOR AN ADDITIONAL PREMIUM.
This endorsement was also contained in the Homeowners Declaration. In addition, the Special Provisions Endorsement states:
The following Exclusion l.i is added to Section I — Exclusions:
i. Loss caused by “sinkhole”
(1)“Sinkhole” means:
(a) A landform created by subsidence of soils, sediment, or rock as underlying strata are dissolved by ground water.
(b) A “sinkhole” may form by collapse into subterranean voids created by dissolution of limestone or dolo-stone or by subsidence as these strata are dissolved.
(c) This exclusion does not apply to the peril of “Catastrophic Ground Cover Collapse.”
The Special Provisions Endorsement also defines “catastrophic ground cover collapse” as follows:
“Catastrophic ground cover collapse” means geological activity that results in all of the following:
(1) The abrupt collapse of ground cover;
(2) A depression in the ground cover clearly visible to the naked eye;
(3) Structural damage to the building, including the foundation; and
(4) The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.
The only other provision in the policy that references sinkholes is also contained in the Special Provisions Endorsement and states:
The following are additional conditions to Section I — CONDITIONS of your policy:
17. Neutral Evaluation Program
With respect to a claim for alleged “Sinkhole loss”, a neutral evaluation program is available as follows:
’ a. Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the department).
b. For alleged “Sinkhole loss” to property, this program applies instead of the Mediation and Appraisal condition set forth elsewhere in this policy.
c. You or we may file a request with the Department for neutral evaluation; the other party must comply with such request.
d. We will pay the costs associated with the neutral evaluation regardless of which party makes the request.
e. The neutral evaluator will be selected from a list maintained by the Department.
The recommendation of the neutral evaluator will not be binding on you or us.
f. Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Suit Against Us Condition 8 in this policy.
In granting Ms. Cespedes’ motion for partial summary judgment and denying Flori *584 da Peninsula’s motion, the trial court found that this latter provision created an ambiguity and that Ms. Cespedes was entitled to coverage for her sinkhole claim.
“The standard of review governing a trial court’s ruling on a motion for summary judgment posing a pure question of law is de novo.” Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). The construction of an insurance contract is a question of law, not a question of fact; therefore, our standard of review is de novo. Kattoum v. N.H. Indem. Co., 968 So.2d 602, 604 (Fla. 2d DCA 2007). We agree with Florida Peninsula that the trial court erred as a matter of law in denying its motion for summary judgment because Ms. Cespedes’ policy clearly and unambiguously excludes coverage for sinkhole damages.
If the language in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. Washington Nat’l Ins. Corp. v. Ruderman, 117 So.3d 943, 948 (Fla.2013). “In construing insurance contracts, ‘courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.’ ” Id. (quoting U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 877 (Fla.2007)). “If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous.” Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). The plain language of Ms. Cespedes’ policy excludes sinkhole damage. The fact that the policy contains a provision describing the neutral evaluation process in the event of a sinkhole loss cannot reasonably be read as creating coverage for a loss that is unambiguously excluded. Because the relevant policy language is- susceptible to only one reasonable interpretation, it was error for the trial court to deny Florida Peninsula’s motion for summary judgment. Accordingly, the judgment in favor of Ms. Ces-pedes is reversed and this case is remanded with instructions to enter judgment in favor of Florida Peninsula.
Reversed and remanded with instructions.
VILLANTI, J., Concurs with opinion.
ALTENBERND, J., Concurs and dissents with opinion.