NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


BIOSCIENCE WEST, INC., a/a/o )
Elaine Gattus, )
)
      Appellant, )
)
v. )      Case No. 2D14-3946
)
GULFSTREAM PROPERTY AND )
CASUALTY INSURANCE CO., )
)
      Appellee. )
_____ )

Opinion filed February 5, 2016.

Appeal from the Circuit Court for Polk
County; Wayne M. Durden, Judge.

Susan W. Fox of Fox & Loquasto, P.A.,
Orlando; and T.J. Monaghan of Cohen
Battisti, Winter Park, for Appellant.

Andrew A. Labbe of Groelle & Salmon,
P.A, Tampa, for Appellee.



BADALAMENTI, Judge.

      Appellant Bioscience West, Inc., ("Bioscience") appeals a final order

granting summary judgment to Appellee Gulfstream Property and Casualty Insurance

Company ("Gulfstream").  The circuit court held that Gulfstream's insured, Elaine

Gattus, was precluded from assigning the benefits of her homeowner's insurance to Bioscience, an emergency water mitigation company, without first receiving Gulfstream's consent. After de novo review and oral argument, we reverse. We hold that: (1) the plain language of the insurance policy merely prohibited the insured's unilateral assignment of the entire policy, not a financial benefit derived from that policy; and (2) Florida law prohibits an insurer from restricting an insured's unilateral post-loss assignment of a benefit derived from that policy.

Ms. Gattus purchased homeowner's insurance from Gulfstream, a property and casualty company. The insurance policy contained a provision limiting the assignment "of this policy" without Gulfstream's written consent.

Ms. Gattus's home subsequently suffered water damage. She hired Bioscience to perform "emergency water removal and construction services" on her home. In exchange for Bioscience's services, Ms. Gattus executed a document entitled, "Assignment of Insurance Benefits," authorizing Bioscience to directly bill, and receive payment from, Gulfstream for its mitigation services for any "benefits or proceeds to [Ms. Gattus's] property" as follows:

> I hereby assign any and all insurance rights, benefits, and proceeds pertaining to services provided by BIOSCIENCE WEST INC. under the above referenced policy to BIOSCIENCE WEST, INC. I hereby authorize direct payment of any benefits or proceeds to my property . . . , as consideration for any repairs made by BIOSCIENCE WEST, INC.

Ms. Gattus subsequently filed an insurance claim with Gulfstream. Gulfstream thereafter denied Ms. Gattus's claim, concluding that the claimed damages were not covered by the policy. Bioscience, as an assignee of the right to recover a

benefit under Ms. Gattus's home insurance policy, filed a breach of contract suit against Gulfstream based on Gulfstream's denial of insurance coverage. Gulfstream moved for summary judgment, which the circuit court granted. The circuit court reasoned that Florida law and the terms set forth in the insurance policy prohibited the assignment of benefits "without the consent of the insurer," which Ms. Gattus had never received from Gulfstream. Next, the circuit court reasoned that any "assignment improperly purports to transfer the right or privilege to adjust the claim to Plaintiff."

We review de novo both an appeal of a summary judgment order and an interpretation of an insurance policy. Jyurovat v. Universal Prop. & Cas. Ins. Co., 84 So. 3d 1238, 1241 (Fla. 2d DCA 2012). "In interpreting an insurance contract, we are bound by the plain meaning of the contract's text." State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569 (Fla. 2011). We "may consult references" such as dictionaries to discern the plain meaning of an insurance policy's language. Garcia v. Fed. Ins. Co., 969 So. 2d 288, 292 (Fla. 2007). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." Menendez, 70 So. 3d. at 569-70 (quoting Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785 (Fla. 2004)). We construe an insurance contract as a whole, "endeavoring to give every provision its full meaning and operative effect." Fla. Peninsula Ins. Co. v. Cespedes, 161 So. 3d 581, 584 (Fla. 2d DCA 2014) (quoting Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013)).

"All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy

- 3 -

dictates against assignment." One Call Prop. Servs. Inc. v. Sec. First Ins. Co., 165 So. 3d 749, 752 (Fla. 4th DCA 2015) (quoting Kohl v. Blue Cross & Blue Shield of Fla., Inc., 988 So.2d 654, 658 (Fla. 4th DCA 2008)). "Once an assignment has been made, 'the assignor no longer has a right to enforce the interest because the assignee has obtained all the rights to the thing assigned.' " Id. at 752 (quoting Cont'l Cas. Co. v. Ryan Inc. E., 974 So. 2d 368, 376 (Fla. 2008)).

Bioscience argues that the insurance policy's plain language merely prohibits an insured's assignment of the entire policy without Gulfstream's consent, but that it does not an insured's unilateral assignment of a benefit derived from the policy. We agree. The Assignment provision of the insurance policy states: "**Assignment.** Assignment of this policy will not be valid unless we give our written consent." (Bold in original, underline emphasis added).

Assignment is defined as "a transfer of rights or property." Assignment, Black's Law Dictionary (9th ed. 2009). Indeed, our supreme court has explained that an assignment generally refers to "a voluntary act of transferring an interest." Ryan Inc. E., 974 So. 2d at 376 (quoting DeCespedes v. Prudence Mut. Cas. Co., 193 So. 2d 224, 227 (Fla. 3d DCA 1966)). An assignment, then, is defined as a voluntary act of transferring a right or an interest.

Having established the meaning of "assignment," we now turn to deriving the plain meaning of the remainder of the phrase "assignment of this policy." In ordinary parlance, one would use the phrase "assignment of this policy" to refer to the entire policy, not something less than the entire policy, such as assignment of the financial proceeds derived from a benefit of the policy. See Sable Cove Condo. Ass'n v.

- 4 -

Owners Ins. Co., 14-CV-00912-MJW, 2014 WL 4398668, at *3 (D. Colo. Sept. 5, 2014). Our interpretation of the insurance policy's clear and unambiguous language yields the conclusion that Ms. Gattus was contractually prohibited from transferring her interest in the entire policy to Bioscience without first receiving Gulfstream's permission.

Gulfstream does not and cannot argue that the entire policy was unilaterally transferred from Ms. Gattus to Bioscience, which would have been void under the language of the policy's anti-assignment clause. Instead, it is clear that Ms. Gattus merely assigned to Bioscience the "insurance rights, benefits, and proceeds pertaining to services provided by" the policy in consideration for Bioscience's emergency mitigation services and authorization to directly bill and to be directly paid by Gulfstream. (Emphasis added). Stated differently, it was a post-loss assignment of a benefit under the policy to Bioscience, namely a right to seek payment for the mitigation services it rendered under the policy, not an assignment of "this policy" issued by Gulfstream to Bioscience. See Peck v. Pub. Serv. Mut. Ins. Co., 114 F. Supp. 2d 51, 56 (D. Conn. 2000) ("An assignment before a loss involves a transfer of a contractual relationship, whereas an assignment after a loss is the transfer of a right to a money claim." (citing 3 Couch on Insurance § 35.7 (3d ed. 1999))).

A review of the "loss-payment" provision provides support for our interpretation that the "Assignment" provision of the insurance policy was not intended to apply to assignments of benefits derived from the policy but instead to assignments of the entire policy. See Cespedes, 161 So. 3d at 584 (noting construction of an insurance contract as a whole). Specifically, an examination of the loss-payment provision demonstrates that Gulfstream contemplated the need to pay third parties who

were "legally entitled" as follows: "[Gulfstream] will pay you <u>unless some other person . . . is legally entitled to receive payment</u>." (Emphasis added).  In sum, Gulfstream anticipated the need to pay those "legally entitled to receive payment" under the policy, which, pursuant to Ms. Gattus's "Assignment of Insurance Benefits" agreement with Bioscience, entitled Bioscience to receive any payments due under the policy.  Thus, there is no contractual language restricting the post-loss assignment of benefits under "this policy" without Gulfstream's consent.

Gulfstream argues that the assignment of benefits to Bioscience violates section 626.854(16), Florida Statutes (2012), a public adjusting statute.  Specifically, Gulfstream contends that the assignment to Bioscience, a mitigation contractor, impermissibly adjusted the insurance claim here, which is contrary to that statute's mandate.  First, there is no record evidence that Bioscience adjusted Ms. Gattus's insurance claim for Gulfstream.  The record before us demonstrates that Bioscience provided emergency, post-loss water removal services to Ms. Gattus's home at her request.  It did not determine the amount due under the policy.

Even more, the text of section 626.854(16) expressly permits a contractor, like Bioscience, to "discuss or explain a bid for construction or repair of covered property with the residential property owner who has suffered loss or damage covered by a property insurance policy" if that contractor "is doing so for the usual and customary fees applicable to the work to be performed as stated in the contract between the contractor and the insured."  A review of the record reveals that Bioscience appropriately discussed the water loss repair with Ms. Gattus and was retained to make

those repairs. We thus reject Gulfstream's argument that assignment of benefits contravenes section 626.854(16) under the facts and circumstances of this case.

Gulfstream further contends that the assignment of benefits to Bioscience violates section 627.405, Florida Statutes (2012), because Bioscience, an assignee, does not have an "insurable interest" in "the things at the time of the loss." Section 627.405(1) states as follows: "No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss." It is true that Bioscience did not have an insurable interest at the time of the loss. Ms. Gattus, however, did have an insurable interest at the time of the loss. Ms. Gattus, the insured/assignor, then assigned her vested insurable interest by the post-loss execution of the assignment of benefits to Bioscience, permitting Bioscience to step into Ms. Gattus's shoes. See United Water Restoration Grp., Inc.. v. State Farm Ins. Co., 173 So. 3d 1025, 1027 (Fla. 1st DCA 2015) ("The assignee stands in the shoes of the assignor and is able to maintain suit in its own name as the real party in interest, 'that is the person in whom rests by substantive law, the claim to be enforced.' " (quoting Weiss v. Johansen, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005))); Accident Cleaners, Inc. v. Universal Ins. Co., 40 Fla. L. Weekly D862, D863 (Fla. 5th DCA Apr. 10, 2015) ("We therefore construe section 627.405 to require the property owner who holds the policy to have an insurable interest at the time of loss. The property owner's insurable interest is imputed to the post-loss assignee."). This is because the right to insurance benefits generally matures as soon as the loss materializes. Cf. Williams v. Auto Owners Ins. Co., 779 So. 2d 563, 565 (Fla. 2d DCA 2001) (quoting Counihan v. Allstate Ins. Co., 25

F.3d 109, 113 (2d Cir. 1994)). Furthermore, our court has recently noted that the "loss-payment provision of the policy did not render the suit premature; indeed, that provision expressly contemplated that there might be a final judgment — presumably stemming from a lawsuit — before payment was due." Curtis v. Tower Hill Prime Ins. Co., 154 So. 3d 1193, 1196 (Fla. 2d DCA 2015). As such, we reject Gulfstream's interpretation of section 627.405 as well.

Even if an insurance policy contained a specific, articulate provision precluding an insured's post-loss assignments of benefits without the insurer's consent, Florida case law yields deep-rooted support for the conclusion that post-loss assignments do not require an insurer's consent.[1] See One Call Prop. Servs. Inc., 165 So. 3d at 755 ("Even when an insurance policy contains a provision barring assignment of the policy, an insured may assign a post-loss claim."). Nearly 100 years ago, the Florida Supreme Court recognized that provisions in an insurance policy requiring consent to assignment of that policy do not apply to assignments after a loss. W. Fla. Grocery Co. v. Teutonia Fire Ins. Co., 77 So. 209, 210-11 (Fla. 1917) ("The policy was assigned after loss, and it is a well-settled rule that the provision in a policy relative to the consent of the insurer to the transfer of an interest therein does not apply to an assignment after loss."). This principle was reaffirmed in 1998, when our supreme court explained that "an insured may assign insurance proceeds to a third party after a loss, even without the consent of the insurer." Lexington Ins. Co. v. Simkins Indus., Inc., 704 So. 2d 1384, 1386 n.3. (Fla. 1998).

---

[1]Florida stands apart from a minority of jurisdictions that permit an insurer to contractually restrict its insured's post-loss assignment without the insurer's consent. See, e.g., In re Katrina Canal Breaches Litig., 63 So. 3d 955, 962-63 (La. 2011).

As the First District recently observed, "[o]n this point we find an unbroken string of Florida cases over the past century holding that policyholders have the right to assign such [post-loss] claims without insurer consent." Sec. First Ins. Co. v. State, Office of Ins. Regulation, 40 Fla. L. Weekly D1449, D1449 (Fla. 1st DCA June 22, 2015). We agree and hold that post-loss insurance claims are freely assignable without the consent of the insurer. Id. (holding that post-loss insurance claims are assignable without the consent of the insurer); One Call Prop. Servs. Inc., 165 So. 3d at 755 (same); Accident Cleaners, Inc., 40 Fla. L. Weekly at D863 ("Dating back to 1917, the Florida Supreme Court recognized that provisions in insurance contracts requiring consent to assignment of the policy do not apply to assignment after loss."); Citizens Prop. Ins. Corp. v. Ifergane, 114 So. 3d 190, 195 (Fla. 3d DCA 2012) ("Post-loss insurance claims are freely assignable without the consent of the insurer.").

Gulfstream's policy concern that post-loss assignments may allow subcontractors, like Bioscience, to influence the adjustment process is misplaced. First, any such influence obviously did not prevent Gulfstream from denying Ms. Gattus coverage, an option available to any insurer if done in good faith. Second, it is imprudent to place insured parties in the untenable position of waiting for the insurance company to assess damages any time a loss occurs. Repairing a home after an unexpected loss event is often a time-sensitive procedure. An insured simply cannot afford to wait for an insurance claim to be adjusted to address that loss, and insurance benefits represent the most ready means of paying for post-loss emergency repairs.

We are mindful that there are competing policy considerations here. These policy considerations are for the legislature to decide, not our court. We

therefore reverse the order granting summary judgment in favor of Gulfstream and remand for further proceedings.

Reversed; remanded for proceedings consistent with this opinion.

NORTHCUTT and KHOUZAM, JJ., Concur.