NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

AUSTIN COMMERCIAL, L.P., a )
Delaware limited partnership, )
                                )
      Appellant, )
                                )
v. )          Case No. 2D18-1051
                                )
L.M.C.C. SPECIALTY CONTRACTORS, )
INC., d/b/a MIMS CONSTRUCTION )
COMPANY, a Florida corporation, )
                                )
      Appellee. )
_____)

Opinion filed April 10, 2019.

Appeal from the Circuit Court for
Hillsborough County; Paul L. Huey, Judge.

Aaron H. Reichelson, Marie Tomassi, and
Patrick J. Poff of Trenam, Kemker, Scharf,
Barkin, Frye, O'Neill & Mullis, P.A.,
Tampa, for Appellant.

Douglas A. Wallace and Joseph T.
Eagleton of Brannock & Humphries,
Tampa; and Derin Parks of Grimes Goebel
Grimes Hawkins Gladfelter & Galvano,
P.L., Bradenton, for Appellee.


BADALAMENTI, Judge.

          Austin Commercial, L.P. (Austin) appeals from a nonfinal order denying its

motion to compel arbitration of its dispute with L.M.C.C. Specialty Contractors, Inc.,

d/b/a Mims Construction Company (Mims).  We hold that Austin and Mims entered into

a valid contract mandating arbitration of the underlying lawsuit initiated by Mims. We thus reverse the trial court's order denying Austin's motion to compel arbitration and remand for entry of an order granting Austin's motion to compel arbitration.

The Hillsborough County Aviation Authority (HCAA) awarded a contract to Austin for construction of a consolidated rental car facility and automated people mover at the Tampa International Airport. The project proceeded in two parts: the design phase (Part 1) and the construction phase (Part 2). Mims served as one of Austin's subcontractors on both phases of the project. For each of the two phases, Austin entered into a contract with the HCAA (the prime contracts). The prime contracts state that any action initiated by either party, HCAA or Austin, would be resolved in state court as follows: "Any action initiated by either party associated with a claim or dispute, and the exclusive venue and jurisdiction for any such action, will be brought in the appropriate State Court in and for Hillsborough County, Florida."

After entering into the prime contract for Part 1 with HCAA, Austin executed a "Consultant Agreement" with Mims that served as Austin and Mims's subcontract for the design phase. Section 19.1 of the subcontract between Austin and Mims contained the following provision:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be subject to the dispute resolution procedures, if any, set out in the Prime Contract between Austin and the [HCAA]. Should the Prime Contract contain no specific requirement for the resolution of disputes or should the [HCAA] not be involved in the dispute, any such controversy or claim shall be resolved by arbitration pursuant to the Construction Industry Rules of the American Arbitration Association then prevailing, and judgment upon the award by the Arbitrator(s) shall be entered in any Court having jurisdiction thereof.

Austin subsequently executed the "Part 2 Contract" with HCAA governing the construction phase of the project. Thereafter, and consistent with a Memorandum of Understanding between Austin and Mims attached to the Consultant Agreement, Austin executed a Work Order with Mims that extended Mims's work on the airport project to the second phase of the project. The Work Order incorporated the terms and conditions of the Consultant Agreement (including the dispute resolution provision) and served as Austin and Mims's subcontract for the construction phase.

After Mims completed its construction work for Part 2 of the project, Mims filed an amended complaint in Hillsborough County state court for, among other things, breach of contract against Austin under quasi-contractual and equitable theories. It further requested a declaration that it was not required to arbitrate its claims against Austin. HCAA is not a party to the lawsuit. The gravamen of Mims's lawsuit is that Austin did not pay Mims for the services it had provided after it received full payment for the project from HCAA. Mims further alleged that Austin did not employ Mims for all services for the project it had promised to Mims. Austin subsequently filed an amended motion to stay and compel arbitration of the claims.

During the hearing on the motion, Austin argued that Mims agreed to arbitrate the dispute because "the dispute resolution provision [in the Consultant Agreement] says if the owner is not involved in the dispute, you don't go to their dispute resolution procedure, but instead do arbitration." The trial court, however, construed the arbitration clause contained in the Consultant Agreement—and incorporated by reference into the Work Order for Part 2—to deny Austin's motion to compel arbitration. The trial court reasoned that because the prime contract between HCAA and Austin

contained a dispute resolution provision providing for litigation of disputes, Austin and Mims were required to litigate their dispute. Austin appeals, arguing that the trial court erred in its interpretation of the Consultant Agreement's dispute resolution provision.

Because the trial court's order denying the motion to compel arbitration is based entirely on its construction of the contract documents, our standard of review is de novo. SCG Harbourwood, LLC v. Hanyan, 93 So. 3d 1197, 1199 (Fla. 2d DCA 2012). In ruling on a motion to compel arbitration of a given dispute, courts must consider three elements: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). Here, the only element in dispute is whether the parties executed a valid written agreement to arbitrate their claims.

As an initial matter, we reject Mims's argument that it did not enter into a subcontract with Austin for Part 2 of the project. The trial court necessarily determined that there was a valid contract for Part 2 of the project. That is, the trial court relied on language incorporated into the Work Order, the agreement between Austin and Mims for Part 2 of the project, in denying Austin's motion despite Mims's argument at the hearing that the parties did not enter into a contract for Part 2. If the parties never entered into a valid contract, there would have been no need for the trial court to interpret and apply the arbitration clause. Thus, necessary and implicit to its ruling that the agreement between Austin and Mims did not compel arbitration is a finding that the parties did indeed execute a valid subcontract for Part 2.

"It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." OBS Co. v. Pace Const. Corp., 558 So. 2d 404, 406 (Fla. 1990). With this in mind, we hold the existence of a subcontract between Austin and Mims for Part 2 is supported by the language of and attachments to the Work Order. The Work Order, which incorporated Part 1's Consultant Agreement, contained the phrase "MIMS PART 2" on the top of every page. The Work Order is signed by representatives of both Austin and Mims. Under a section labeled "SCOPE OF WORK," Austin and Mims agreed that "[t]he Work covered by this Work Order will be performed under the terms and conditions of the Part 1 Consultant Agreement." (Emphasis added.) The parties further agreed that "[t]he Scope of Sublet Work shall be also defined by the Part 2 Contract Documents as contained in the Exhibits listed below and attached hereto by reference, the Austin Part 2 Contract with attachments and Part 2 Supplemental Agreement with attachments as if attached hereto." Exhibit A of the Work Order, consistent with the Memorandum of Understanding appended to the Consultant Agreement, expanded the scope of Mims's services by adding, among other positions, an Assistant Superintendent and Project Engineer to facilitate Part 2 of the project.

Accordingly, an examination of the Work Order and its included attachments confirms that the Work Order served as the subcontract for Mims's work on the construction phase of the project. See OBS Co., 558 So. 2d at 406. Because the Work Order served as the subcontract between Austin and Mims for the construction phase of the project, their dispute arising from Mims's work on that phase is governed

- 5 -

by the Consultant Agreement's dispute resolution provision incorporated into the Work Order.  See Henderson Inv. Corp. v. Int'l Fid. Ins. Co., 575 So. 2d 770, 771-72 (Fla. 5th DCA 1991) (holding that surety could compel arbitration where it had incorporated an arbitration clause from the construction contract into its performance bond).

Concluding that Austin and Mims executed a valid subcontract for the construction phase of the project, we next address whether they agreed to arbitrate their claims.  The Consultant Agreement's dispute resolution provision incorporated into the contract provides in relevant part:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be subject to the dispute resolution procedures, if any, set out in the Prime Contract between Austin and the [HCAA].  Should the Prime Contract contain no specific requirement for the resolution of disputes or should the [HCAA] not be involved in the dispute, any such controversy or claim shall be resolved by arbitration . . . .

Austin argues that the provision provides for two exceptions to the applicability of the prime contract's dispute resolution provision but the trial court's reasoning only addressed one of the exceptions; namely, that the prime contract "contain[ed] no specific requirement for the resolution of disputes."  Mims does not appear to defend or advance the trial court's ruling that because the prime contract between HCAA and Austin contained a dispute resolution provision, Mims was not compelled to arbitrate its claims against Austin.  Instead, Mims advances a tipsy-coachman argument that the Consultant Agreement's dispute resolution provision is inapplicable because HCAA is "involved" in its dispute with Austin.  We disagree with Mims's contention.

- 6 -

We are mindful that Florida public policy favors arbitration of disputes and thus "courts should resolve doubts concerning the scope of such agreements in favor of arbitration." Stinson-Head, Inc. v. City of Sanibel, 661 So. 2d 119, 120 (Fla. 2d DCA 1995). That said, the "determination of whether an arbitration clause requires arbitration of a particular dispute necessarily 'rests on the intent of the parties.' " MDC 6, LLC v. NRG Inv. Partners, LLC, 93 So. 3d 1145, 1147 (Fla. 2d DCA 2012) (quoting Seifert, 750 So. 2d at 636). To ascertain the parties' intent, we examine the plain language of the contract. Id.; see also Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co., 185 So. 3d 638, 640 (Fla. 2d DCA 2016) (explaining that we are bound by the plain meaning of a contract's text when interpreting a contract). We construe a contract, "including the arbitration and the limitation provisions, in a way that gives a reasonable meaning to all the terms, rather than in a way that will render part of the contract of no effect." Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 263 (Fla. 2d DCA 2004).

Turning to the trial court's interpretation of the Consultant Agreement's arbitration provision, the trial court found that the mere existence of a dispute resolution provision within the prime contract rendered the Consultant Agreement's arbitration mandate inapplicable. The trial court's interpretation of the Consultant Agreement's dispute resolution provision does not give a reasonable meaning to its incorporated terms from the prime contract; namely, the applicability of the prime contract's dispute resolution provision. The unambiguous language of the Consultant Agreement's dispute resolution provision provides for two exceptions to the applicability of the dispute resolution procedures set out in the prime contract: (1) the prime contract "contain[s] no specific requirement for the resolution of disputes," **or** (2) the HCAA is not

- 7 -

"involved in the dispute." If either of these two circumstances exists, the dispute "shall be resolved by arbitration." As will be explained, the trial court's finding that the mere existence of a dispute resolution provision within the prime contract, which does not have bearing on the lawsuit initiated by Mims here, requires litigation of the dispute between Mims and Austin belies the plain and ordinary language of the prime contract's dispute resolution provision.

The prime contract, governing Austin and HCAA, requires litigation of disputes that are "initiated by either party." (Emphasis added.) Thus, if Austin or HCAA initiates "[a]ny action," "the exclusive venue" of that action is "the appropriate State Court in and for Hillsborough County, Florida." Reading the dispute resolution provision of the prime contract together with the dispute resolution provision of the Consultant Agreement, as we must, leads us to the conclusion that the trial court's finding that the mere existence of a dispute resolution provision within the prime contract mandated litigation of Mims's and Austin's dispute was erroneous. This is because the prime contract's dispute resolution provision is wholly inapplicable to Mims's and Austin's dispute, as neither HCAA nor Austin initiated the lawsuit at issue here. To hold otherwise effectively contravenes the plain and ordinary language of the prime contract's dispute resolution provision, which is only applicable to lawsuits initiated by HCAA or Austin. Cf. Bioscience W., 185 So. 3d at 640 (instructing courts to construe contracts as a whole to give meaning to every provision). Because Mims initiated the underlying action against Austin, the dispute resolution provision found in the prime contract is inapplicable to the dispute between Mims and Austin.

Turning to the second exception to mandatory arbitration set forth in the Consultant Agreement, we must decide whether HCAA is "involved" in the lawsuit Mims initiated against Austin. Mims argues that it qualifies for this exception to the arbitration mandate because HCAA is "involved" in its dispute with Austin. Mims asserts that even though it did not name HCAA as a party to the lawsuit, HCAA is nonetheless involved in the dispute because of HCAA's status as a third-party beneficiary of the subcontract.[1] We disagree.

First, such a broad interpretation of the term "involved" would render the exception superfluous because HCAA, according to the prime contracts, is a third-party beneficiary to "<u>all</u> agreements, subcontracts and purchase orders of [Austin]." (Emphasis added.) See <u>Universal Prop. & Cas. Ins. Co. v. Johnson</u>, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013) ("A contract is not to be read so as to make one section superfluous, and so '[a]ll the various provisions of a contract must be so construed . . . as to give effect to each.' " (alteration in original) (quoting <u>Univ. of Miami v. Frank</u>, 920 So. 2d 81, 87 (Fla. 3d DCA 2006))).

Next, Mims's proposed, broad interpretation of "involved" invites an interpretation contrary to its plain and ordinary meaning. "Involve" is defined, in pertinent part, as "[t]o relate to or affect" or "[t]o show to be a participant; connect or implicate." <u>American Heritage Dictionary</u>, 923 (5th ed. 2018); <u>see also</u> <u>Bioscience</u>, 185 So. 3d at 640 (explaining that we may consult dictionaries to discern the plain meaning of contractual language); <u>State v. Elder</u>, 975 So. 2d 481, 483-84 (Fla. 2d DCA 2007)

---

[1]The prime contracts between Austin and the HCAA provide that "[HCAA] will be identified as an intended third party beneficiary of all agreements, subcontracts and purchase orders of [Austin] related to this Agreement."

(" 'Involve' is defined, in pertinent part, as 'to draw in as a participant,' to 'implicate,' 'to relate closely,' to 'connect,' to 'have an effect on,' to 'concern directly,' to 'affect.' " (quoting Webster's Third New International Dictionary 1191 (1986))).

Applying these definitions, HCAA is clearly not "drawn in as a participant" to the lawsuit because it is not a party to the lawsuit and, as such, need not participate in it. Indeed, the allegations of Mims's operative complaint show that HCAA has paid Austin "in full for all work performed on the TIA Project." Thus, whether Mims is paid by Austin does not affect HCAA. The financial dispute Mims has initiated against Austin is solely between those two parties and does not "involve" HCAA.

Furthermore, one would not ordinarily understand an entity to be "involved" in a dispute where that entity is neither drawn into the dispute nor affected by the dispute. Only an impermissible, strained textual interpretation of "involved in the dispute" would yield a conclusion that HCAA would be affected by a financial dispute between Austin and Mims. Cf. Bioscience, 185 So. 3d at 641 (explaining that the trial court's interpretation of a contractual provision was contrary to the contractual language's plain meaning). Accordingly, supported by the allegations in Mims's complaint, it is difficult to discern that Mims's dispute with Austin affects or implicates HCAA.[2] See Elder, 975 So. 2d at 483-84. Because HCAA is not "involved" in Mims's lawsuit initiated against Austin, it does not meet the second exception to the Consultant Agreement's mandatory arbitration provision. Thus, reading all contractual provisions as a whole, Mims's dispute with Austin "shall be resolved by arbitration," as provided by

_____

[2]This interpretation was also favored by the trial court. In its discussion with the parties during the hearing, the court commented that "the owner's not involved [in the dispute]."

- 10 -

the dispute resolution provision found in the Consultant Agreement and incorporated into Austin and Mims's Work Order.

Accordingly, we reverse the trial court's order denying Austin's motion to compel arbitration and remand for entry of an order granting its motion and referring the dispute to arbitration.  See Orkin, 872 So. 2d at 266.

Reversed; remanded with instructions.

CASANUEVA and ROTHSTEIN-YOUAKIM, JJ., Concur.