DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CERTIFIED PRIORITY RESTORATION** a/a/o **JAMES KREMPLER,**
Appellant,

v.

**CITIZENS PROPERTY INSURANCE CORPORATION,**
Appellee.

No. 4D21-149

[June 30, 2021]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Sandra Bosso-Pardo, Judge; L.T. Case Nos. 502018SC014994, 502019AP000087.

Peter Mineo, Jr. and Julie Collange of The Mineo Salcedo Law Firm, P.A., Davie, for appellant.

Lauren J. Smith of Luks, Santaniello, Petrillo & Cohen, Stuart, for appellee.

KLINGENSMITH, J.

Appellant Certified Priority Restoration ("CPR") received an assignment of benefits from a condominium unit owner in exchange for water-loss mitigation services. CPR submitted this assignment of benefits and an invoice for the work it performed to the unit owner's insurer, Citizens Property Insurance Corporation. When Citizens paid only a portion of the invoice total under a policy provision that provided for a $3,000 payment cap, CPR sued for full payment of its invoice. Citing its policy language, Citizens moved for summary judgment against CPR. The trial court granted that motion in favor of Citizens and, for the reasons set forth below, we affirm.

The insurance policy in question provided coverage for "Reasonable Emergency Measures" following property damage as follows:

**2. Reasonable Emergency Measures**

**a.** We will pay up to the greater of $3,000 or 1% of your Coverage **A** limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.

**b.** We will not pay more than the amount in **a.** above, unless we provide you approval, within 48 hours of your request to us to exceed the limit in **a.** above. In such circumstance, we will pay only up to the additional amount for the measures we authorize. If we fail to respond to you within 48 hours of your request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in **a.** above only up to the cost incurred by you for the reasonable emergency measures necessary to protect the covered property from further damage.

While the policy did not specify a required method for requesting to exceed the $3,000 limit, the declarations page of the policy stated the insured "may not exceed the greater of $3,000 or 1% of your Coverage A limit of liability unless you call us first and receive our approval." The paragraph of the policy entitled "Notice of Claim to Us" also provided that coverage may not exceed $3,000 "unless you call us first and receive our approval." Regardless of the method to be used, the policy was clear that a request to exceed the Reasonable Emergency Measures limit had to be conveyed to Citizens for its prior approval.

On the same day the water damage occurred at the subject property, the unit owner contacted and hired CPR to provide water removal and remediation services. As part of these services, CPR removed damaged drywall from the property by cutting into the wet, moldy portions of the wall and discarding those pieces. After the repairs were completed, the unit owner assigned his benefits under the Citizens insurance policy to CPR as consideration for the repairs that were made, thus giving CPR the insurance rights, benefits, and claim to any proceeds under the policy.

The dispute in this case centers around a paragraph in CPR's Assignment of Benefits titled "5. Request to Exceed Cap." This paragraph not only affirmed the understanding of both CPR and the unit owner that the Citizens policy might contain a payment cap on services but also stated, "Should such a cap be contained in Client's policy, this term hereby operates as a direct request to Client's insurance company for approval to exceed such cap upon submission of this document."

After the needed repairs were completed, Citizens was notified of the unit owner's claim. Following up on this claim, Citizens sent a field adjuster to inspect the property and take photographs documenting some of these repairs. Three weeks later, CPR contacted Citizens by sending them an email which stated: "Please find the attached in regards to Claim#: 001-00-176733" and included the name of the unit owner. CPR attached eighteen pages of documents to the email, which included—for the first time—the Assignment of Benefits, an invoice for the services performed, and photographs of the water damage. Notably, CPR's email did not specifically request approval for payment exceeding the $3,000 limit, nor did it draw attention to that paragraph of the Assignment referencing the "request."

Citizens did not respond to CPR's email until a few weeks later when it notified CPR that its claim was covered under the unit owner's policy. In its letter, Citizens explained that following a detailed review by an independent third party to determine the appropriate cost for repairs performed under industry standards, Citizens was providing a $3,000 payment towards the cost of the emergency measures as provided by the policy. The letter also directed attention to "Section 1 – Property Coverages" for the applicable policy language regarding the $3,000 cap and the reimbursement limit on costs incurred in the performance of emergency measures.

CPR subsequently filed suit against Citizens for the difference between Citizens' $3,000 payment and the remainder its unpaid invoice. CPR asserted that its email to Citizens containing the Assignment of Benefits functioned as an official request to exceed the $3,000 cap. Because Citizens failed to respond within forty-eight hours to its request to exceed the cap, CPR argued that the failure to respond made the cap inapplicable under the policy terms. CPR also argued that a portion of their invoice— a $185.00 cost incurred for the removal of damp, moldy drywall— constituted "removal of debris" which was not subject to the cap because it fell under the policy's "Debris Removal" section.

Citizens moved for summary judgment arguing there was no issue of material fact because it had reimbursed CPR for $3,000 under the conditions of its policy with the unit owner. It also argued that CPR's request to exceed the $3,000 cap was in the Assignment of Benefits contract (which it was not a party to), was buried in one of many attachments to an email, and did not satisfy the condition of a formal request to exceed the cap.

3

Following a hearing, the trial court granted Citizens' motion for summary judgment, finding that the email sent by CPR was not a valid request to exceed the $3,000 cap but instead "an intentional gotcha type tactic . . . to avoid the Reasonable Emergency Measures provision of the insurance policy." The trial court further found that under the common definition of "debris," CPR's removal of the wet drywall was not "debris removal," but simply part of its performance of water mitigation services. After CPR's motion for rehearing was denied, this appeal followed.

The standard of review of an entry of summary judgment is de novo. *See Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1296 (Fla. 2011). If the moving party presents sufficient evidence of the non-existence of a material issue, that party is "entitled to a summary judgment unless the [non-moving] party comes forward with some evidence which will change the result—that is, evidence sufficient to generate an issue on a material fact." *Gonzalez v. Citizens Prop. Ins. Corp.*, 273 So. 3d 1031, 1036 (Fla. 3d DCA 2019) (quoting *Harvey Bldg., Inc. v. Haley*, 175 So. 2d 780, 783 (Fla. 1965)).

Insurance contracts are construed in accordance with the plain language of the policies. *See Bioscience W., Inc. v. Gulfstream Prop. and Cas. Ins. Co.*, 185 So. 3d 638, 640 (Fla. 2d DCA 2016). Because "post-loss insurance claims are freely assignable without the consent of the insurer," CPR obtained the same rights under the policy as the unit owner by virtue of the Assignment of Benefits. *Id.* at 643. "Once an assignment has been made, 'the assignor no longer has a right to enforce the interest because the assignee has obtained all rights to the thing assigned.'" *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015) (quoting *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008)). Therefore, not only did CPR obtain the unit owner's rights to payment under the policy, but it also secured the obligation to comply with the policy terms.

There is no issue about whether the unit owner properly assigned his benefits under the Citizens policy to CPR for performing the work. He did, and CPR was therefore allowed to make the request for reimbursement from Citizens under the policy. *See Bioscience W.*, 185 So. 3d at 643*; Sec. First Ins. Co.*, 177 So. 3d at 628. The question here is whether CPR submitted a valid request to exceed the policy's $3,000 limit on Reasonable Emergency Measures that opened the forty-eight-hour response window. In both its complaint and response in opposition to Citizens' motion for summary judgment, CPR submitted and relied on the email and attachments it sent to Citizens relating to the unit owner's water damage repair. No other facts, claims, or evidence in the record suggested that

4

any other communication from CPR to Citizens would have functioned as a request to exceed the cap.

The goal of interpreting the terms of a policy is to arrive at a reasonable interpretation that accomplishes the meaning and purpose of the policy. *See Sidiq v. Tower Hill Select Ins. Co.*, 276 So. 3d 822, 827 (Fla. 4th DCA 2019). Although no definition or condition is stated in the policy about how or when to make a "request" for Citizens' approval to exceed the cap, the clear wording of the policy established a reimbursement cap on expenses for emergency measures which could not be exceeded without a request to, and prior approval from, the insurer. While CPR claimed the paragraph within its Assignment of Benefits contract operated as a "request," the circumstances involving its transmission to Citizens indicated otherwise.

Here, the paragraph in CPR's Assignment of Benefits contract was worded more in terms of a notice than a request to exceed the cap; in other words, the paragraph was worded as a notification that the Assignment would operate as a direct request. However, the wording of the notice or request is not the dispositive issue. Even assuming this paragraph constituted a "request" in the light most favorable to CPR, all reasonable inferences from the circumstances surrounding the submission of the Assignment to the insurer indicated, as the trial court observed, that CPR was attempting to set up a "waiver" by burying this paragraph within one of the eighteen documents sent to Citizens in an email. Nothing in the email called attention to the "request" or indicated that Citizens' pre-approval was sought. Therefore, the record supports the trial court's assessment that this was a "gotcha" tactic to create a situation where the policy's forty-eight-hour deadline for a response was both intended and likely to be missed. This court does not permit such tactics. *See Jaszay v. H.B. Corp.*, 598 So. 2d 112, 113 (Fla. 4th DCA 1992) (citing *Salcedo v. Asociacion Cubana, Inc.*, 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979)) ("[W]e will not countenance such 'gotcha' maneuvers.").

Additionally, the trial court did not err in granting summary judgment on the basis that CPR did not perform "debris removal" while servicing the unit-owner's property. The removal of the wet drywall does not qualify as "debris removal" because, although the drywall damaged by the water loss and demolition during the repair may have caused "debris," that demolition is not itself "debris removal." *See Harbor Communities, LLC v. Landmark Am. Ins. Co.*, 2008 WL 2986424 *5 (S.D. Fla. Aug. 4, 2008) ("'Debris removal' includes the cost of removing debris from one location to another. [It] does not include demolition costs because demolition entails the act of destroying or wrecking. . . . Rather, demolition is an

5

event which creates debris that must be removed.").  The drywall removal by CPR fell under CPR's performance of water mitigation services; thus, there was no genuine issue of material fact on this issue left to present to a jury.  *See McDonald v. Fla. Dep't of Transp.*, 655 So. 2d 1164, 1168 (Fla. 4th DCA 1995).

Therefore, the trial court did not err in granting Citizens' motion for summary judgment, and we affirm on all issues.

*Affirmed.*

GROSS and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***